NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11605


COMMONWEALTH  vs.  RICHARD M. BOUCHER, JR.



Plymouth.     September 11, 2015. - March 23, 2016.

Present:  Gants, C.J., Spina, Botsford, Duffly, & Hines, JJ.


Homicide.  Assault and Battery by Means of a Dangerous Weapon.
    Armed Assault with Intent to Murder.  Practice, Criminal,
    Capital case, Instructions to jury.  Intoxication.  Mental
    Impairment.  Intent.



Indictments found and returned in the Superior Court
Department on July 2, 2010.

The cases were tried before Raymond P. Veary, Jr., J.


Leslie W. O'Brien for the defendant.
Robert C. Thompson, Assistant District Attorney, for the
Commonwealth.
Chauncey B. Wood, Paul E. Nemser, & Joshua M. Daniels, for
Massachusetts Association of Criminal Defense Lawyers, amicus
curiae, submitted a brief.


DUFFLY, J.  The defendant was convicted of murder in the

first degree, G. L. c. 265, § 1, on a theory of extreme atrocity

or cruelty in the May 27, 2010, shooting death of James Tigges

at a party in Plymouth.[1]  The defendant also was convicted of armed assault with intent to murder, and assault and battery by means of a dangerous weapon, in the shooting of Tigges's friend, Jackson Duncan, who was paralyzed from the chest down when a bullet severed his spinal cord.[2]

On appeal, the defendant contends that the judge's instructions as to the manner in which the jury could consider evidence of mental impairment by intoxication precluded them from considering that evidence on the question whether the defendant acted with extreme atrocity or cruelty.  Specifically, he contends that the instructions improperly limited the jury's consideration of that evidence to the elements of murder in the first and second degree requiring intent or knowledge, such as premeditation or malice, whereas conviction of murder in the first degree on a theory of extreme atrocity or cruelty does not require either that a defendant know his or her acts are extremely atrocious or cruel, or that he or she intend them to be.  In the alternative, the defendant suggests that this court should adopt a specific intent requirement for murder committed with extreme atrocity or cruelty, as was proposed in concurring

---

[1] The defendant was acquitted of murder in the first degree on a theory of premeditation.

[2] In addition, the defendant was convicted of unlawful possession of a firearm, G. L. c. 269, § 10 (a), and unlawful possession of a loaded firearm, G. L. c. 269, § 10 (n).

opinions in Commonwealth v. Riley, 467 Mass. 799, 828-829 (2014) (Duffly, J., concurring), and Commonwealth v. Berry, 466 Mass. 763, 777-778 (2014) (Gants, J., concurring).  We decline the invitation to adopt a new formulation of extreme atrocity or cruelty at this time.  The defendant asks also that we exercise our extraordinary power pursuant to G. L. c. 278, § 33E, and reduce his degree of guilt to murder in the second degree.

For the reasons that follow, we conclude that there was no error requiring reversal, and we see no reason to grant relief under G. L. c. 278, § 33E.

1.  Background.  The jury could have found the following. Early on the evening of May 26, 2010, Adam Egan was in his apartment in Plymouth with a friend, when the two decided to telephone some other friends and invite them over.  Tigges, Duncan, the defendant, and another friend of his were among the guests.  Eventually, the party grew to approximately twenty people, in their late teens or early twenties, all of whom were drinking alcohol.  The defendant, like most of the guests, was drinking beer.  Some of the guests played a drinking game called "beer pong," but no one testified to having seen the defendant participate in the beer drinking game.  Two witnesses testified that, although the defendant had been drinking, he "seemed normal," and was acting no differently from his manner on previous occasions when they had been at parties with him.  The

defendant was not slurring his words, nor was he stumbling or falling over.

At one point, while the defendant was in the kitchen with Duncan and another guest, the defendant dropped a gun; he said "oh shit" and picked it up. When Duncan inquired why the defendant had the gun and what he would do if he got caught with it, the defendant said that he would have no problem shooting a police officer "if he had to." Duncan thought the gun was a "Glock," and he could see that it was loaded. The defendant told him, in a manner that appeared to be "kinda cocky" or "bragging," that the bullets were hollow tip.[3] The presence of the gun in the apartment made Duncan "uncomfortable," and he decided to leave the party.

As Duncan and Tigges were leaving through the back door, the defendant removed a bottle of beer from Duncan's back pocket; Duncan's cousin, Mikayla Plaisted, took the bottle from the defendant and handed it back. Duncan and Tigges continued walking outside to the back yard, with Plaisted close behind. The defendant followed them, making comments; he called Tigges and Duncan names like "pussy" and "bitch," and asked if Duncan

---

[3] A ballistics expert testified that a hollow point bullet is designed to expand when the projectile strikes an object, so that when a hollow point bullet "strikes human tissue" it results in a larger wound than that caused by other types of bullets.

thought he was a "tough guy."

The defendant was somewhere between four and fifteen feet from Tigges and Duncan when he began to shoot at them.[4] Duncan was shot first; Tigges jumped in front of him as the shots were being fired. The defendant continued to fire until the gun made several clicking sounds.[5] He then ran from the scene. Plaisted chased him for some distance, shouting, "I know who you are, you shot my cousin, you're not going to get away with it, they're going to find you." The defendant turned around, looked at her, raised his hand as though it were a gun, and smiled, before continuing to run.

Tigges was shot four times, in the abdomen and left leg. He remained conscious after he was shot; he was moaning and grimacing and appeared to be in a great deal of pain. He said "please don't touch me," "it hurts," and that it hurt "everywhere." Tigges was transported to a local hospital, and then to a Boston hospital, where he died a few hours later as a result of his wounds. Duncan was shot once in the chest; the bullet traveled through his body and transected his spinal cord. Duncan survived, but was paralyzed from the chest down. He was

---

[4] Witnesses variously described the distance between the defendant and the victims at that point as from four to five feet, eight feet, eight to ten feet, and ten to fifteen feet.

[5] The police later recovered nine spent shell casings at the scene.

one of the Commonwealth's key witnesses at trial.

A trained police canine was dispatched to the scene shortly after the shootings, at approximately 1:20 A.M. on the morning of May 27, 2010, in an effort to locate the defendant. The canine tracked to a house several blocks away, but the defendant was not found inside and no physical evidence was recovered.[6] He was apprehended approximately two weeks later, at a fast food restaurant in another town.

2. Discussion. a. Instruction on diminished capacity. The defendant argues that the judge's instruction on diminished capacity was erroneous. He claims that the instruction improperly limited the jury's consideration of the evidence of his intoxication and, consequently, did not allow the jury to consider evidence of his diminished capacity from the consumption of alcohol with reference to whether the shooting was committed with extreme atrocity or cruelty.[7] Specifically, the defendant maintains that because the instruction on intoxication limited the jury's consideration of the evidence of

---

[6] The police later learned that the house where the canine had alerted was that of one of the defendant's friends.

[7] There was testimony at trial that the defendant had been drinking, but the evidence of whether and to what degree the defendant was intoxicated was disputed. In support of the defendant's theory that he was highly intoxicated, one witness testified that everyone at the party "was drinking beer" and "getting drunk," including the defendant who by midnight was "very drunk."

intoxication to his knowledge and intent, they would not have been able to consider his level of intoxication with reference to whether the killing was committed with extreme atrocity or cruelty because, under current law, to convict a defendant of murder in the first degree on a theory of extreme atrocity or cruelty, the Commonwealth is not required to prove that the defendant either knew his or her acts were extremely atrocious or cruel, or intended that they be so.

We do not agree with the defendant's view of these instructions. The instructions correctly described the elements of murder in the first degree on the theory of extreme atrocity or cruelty. The judge properly instructed the jury on the existing state of the law, and the factors set forth in Commonwealth v. Cunneen, 389 Mass. 216, 227 (1983) (Cunneen), that they were to consider in determining whether the killing was committed with extreme atrocity or cruelty: "indifference to or taking pleasure in the victim's suffering, consciousness and degree of suffering of the victim, extent of physical injuries, number of blows, manner and force with which delivered, instrument employed, and disproportion between the means needed to cause death and those employed." The judge also instructed properly that "proof of malice aforethought is the only requisite mental intent for a conviction of murder in the first degree based on murder committed with extreme atrocity or

cruelty," id., and that "murder committed with malice aforethought may be found to have been committed with extreme atrocity or cruelty, even though the murderer did not know that his act was extremely atrocious or cruel," id., quoting Commonwealth v. Monsen, 377 Mass. 245, 253 (1979). See, e.g., Commonwealth v. Martinez, 437 Mass. 84, 91 (2002). The judge correctly explained that "[t]he inquiry focuses on the defendant's actions in terms of the manner and means of inflicting death and on the resulting effect on the victim."

After giving the instruction on extreme atrocity or cruelty, the judge then instructed on diminished capacity by voluntary consumption of alcohol. The challenged portion of that instruction is as follows:

> "I now want to turn to the issue of diminished capacity. Whenever the defendant's knowledge or intent must be proved, the defendant's culpability rests upon the Commonwealth's proof of such knowledge or intent beyond a reasonable doubt. In other words, the Commonwealth must prove beyond a reasonable doubt that the defendant had the required knowledge or intent in order to prove that he committed the crime. Whenever the Commonwealth must prove the defendant's intention to do something, you should consider any credible evidence of the effect upon the defendant of his consumption of alcohol in determining whether the Commonwealth has met its burden of proof. Likewise, whenever the Commonwealth must prove the defendant's knowledge of any facts or circumstances, you should consider any credible evidence of the effect upon the defendant of his consumption of alcohol in determining whether the Commonwealth has met its burden.
>
> "More particularly, you should consider any credible evidence of the effect upon the defendant of his

consumption of alcohol in determining, one, whether [the defendant] deliberately premeditated the killing of James Tigges. That is whether he thought before he acted and whether he reached the decision to kill after reflection, at least for a short period of time. Two, whether [the defendant] intended to kill or to cause grievous bodily harm to James Tigges or was aware that his conduct created a plain and strong likelihood that Mr. Tigges's death would result from his conduct. And three, whether [the defendant] acted in a cruel or atrocious manner in causing the death of James Tigges.

"In considering such evidence, you should consider it along with all other credible evidence relevant to the defendant's intent and/or knowledge. I reiterate, whenever the Commonwealth must prove that a defendant intended to do something or had knowledge of certain facts or circumstances, in order to prove a crime, such as first or second-degree murder, you should consider any credible evidence of the effect of his consumption of alcohol in determining whether the Commonwealth has met its burden of proving the defendant's intent or knowledge beyond a reasonable doubt."

The defendant contends that, in context, this instruction, with its frequent references to his knowledge or intent, would have suggested to the jury that they could consider evidence of intoxication only to establish the elements of the offense that require intent or knowledge, such as premeditation and malice. Under this view, the jury would have been precluded from considering evidence of the defendant's impairment from intoxication as it related to all of the Cunneen factors, because "intent and knowledge are not aspects of extreme atrocity or cruelty." See Commonwealth v. Rutkowski, 459 Mass. 794, 797-798 (2011), citing Commonwealth v. Rosenthal, 432 Mass. 124, 130 (2000).

When the theory of extreme atrocity or cruelty is in play, an instruction on voluntary intoxication that links consideration of intoxication only to a defendant's intent or knowledge, without also explaining that the jury may consider intoxication in relation to whether the defendant committed the killing with extreme atrocity or cruelty, is in error.  See Commonwealth v. Howard, 469 Mass. 721, 750 (2014); Commonwealth v. Gonzalez, 469 Mass. 410, 422 (2014).  An instruction on voluntary intoxication also is erroneous if it is unclear from the context in which it is given that the jury may consider whether a defendant's intoxication negates a finding of extreme atrocity or cruelty.  See Commonwealth v. Rutkowski, supra at 798 ("[T]he context in which the instruction was given, immediately after the instruction on murder in the second degree, suggested that mental impairment related only to the issue of malice. . . .  It should have been made clear to the jury that they could consider evidence of mental impairment on the specific question whether the murder was committed with extreme atrocity or cruelty").

Here, however, the instruction correctly conveyed that the effect upon the defendant of his consumption of alcohol was relevant to the Commonwealth's burden to prove that the defendant acted in a cruel or atrocious manner.  Moreover, after the jury requested clarification as to the instructions on

murder in the first degree and voluntary intoxication, the judge provided them with a written document containing the language that he had used previously, formatted in such a way as to show that "credible evidence of the effect upon the defendant of his consumption of alcohol" should "[m]ore particularly" be considered in reaching a determination whether the defendant "acted in a cruel or atrocious manner in causing the death of James Tigges."  We previously have concluded that a similar instruction was not erroneous.  See Commonwealth v. Szlachta, 463 Mass. 37, 49 (2012) (not error to instruct that jury "may consider evidence of impairment when considering whether [a defendant] acted in a cruel or an atrocious manner causing the death of [a victim]").  See also Commonwealth v. Oliveira, 445 Mass. 837, 848-849 (2006).

b.  Request that jury be instructed to consider knowledge or intent.  The defendant suggests in the alternative that we should consider adding an additional element of knowledge or intent in cases involving extreme atrocity or cruelty, above that required to prove malice.  In his proposed jury instructions, while acknowledging that it was inconsistent with the current state of the law, defense counsel requested that, as suggested by language in Commonwealth v. Gould, 380 Mass. 672, 686 & n.16 (1980) (Gould), the jury should be instructed that they "may consider what effect, if any, the defendant's impaired

capacity had on his ability to appreciate the consequences of his choices" in relation to having acted with extreme atrocity or cruelty.[8]  Before us, the defendant's argument expands upon his request for a Gould instruction.  The defendant contends that the jury should be instructed that when "a conviction is based on the theory of extreme atrocity or cruelty, it must be proven that the defendant intended that the consequences of his actions be extremely atrocious or cruel."

In our decisions following Gould, however, we have reiterated that there is no requirement of intent, beyond the requirement of malice needed for all convictions of murder, in order to convict a defendant on a theory of extreme atrocity or cruelty.  Thus, the instruction as given complies with the current state of the law and was not erroneous.  See, e.g., Commonwealth v. Szlachta, supra at 47 (although Gould appeared to suggest "that the court was introducing a new mens rea

---

[8] The Commonwealth argues that defense counsel was not sufficiently specific in challenging the absence of the requested language in the judge's final charge, and therefore that any objection to the absence of the proposed instruction was not preserved.  After the charge, counsel directed the judge's attention to the omission of the requested language by reference to the numbered paragraphs of his written instructions, including the request for the Gould instruction. See Commonwealth v. Gould, 380 Mass. 672, 684-685 (1980).  Although counsel's objection may not have been a model of clarity, the request for that instruction was preserved.  See Commonwealth v. Morgan, 422 Mass. 373, 376-377 (1996); Commonwealth v. Biancardi, 421 Mass. 251, 252 (1995).

element . . . our jurisprudence following <u>Gould</u> clearly has rejected this suggestion"); <u>Cunneen</u>, <u>supra</u> at 227 ("proof of malice aforethought is the only requisite mental intent for a conviction of murder in the first degree based on murder committed with extreme atrocity or cruelty").

3. <u>Review under G. L. c. 278, § 33E</u>. The defendant also asks us to review his murder conviction under G. L. c. 278, § 33E, and reduce the degree of guilt to murder in the second degree. We have conducted a review of the entire record pursuant to G. L. c. 278, § 33E, and we see no reason to set aside or reduce the defendant's conviction. See <u>Commonwealth</u> v. <u>LeBeau</u>, 451 Mass. 244, 261-262 (2008).

<u>Judgments affirmed</u>.