NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-223

COMMONWEALTH

vs.

ADALBERTO MARTINEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following two Superior Court jury trials, the defendant, Adalberto Martinez, was convicted of three counts of aggravated statutory rape of a child, G. L. c. 265, § 23A.  On appeal, the defendant argues that (1) both trial judges improperly admitted prior bad act evidence, and (2) the second trial judge improperly admitted hearsay statements of a codefendant.  We affirm.

Background.  We summarize the procedural history and the relevant facts as the jury could have found them, reserving some facts for later discussion.  At the first trial, the defendant

was charged with two counts of conduct,[1] one perpetrated against the daughter of the defendant's then-girlfriend (victim one), and the other against victim one's friend (victim two), both at victim one's home in 2015 when the victims were approximately ten years old.  Victim two would often sleep over at victim one's house.  One evening in 2015, the victims were lying in bed talking when the defendant entered the room, lay between the two girls in the bed, and touched both girls' genitals.  Victim one told her mother, the defendant's then-girlfriend, about the incident shortly thereafter, though not immediately afterwards; victim one's mother told her not to tell anyone else.  Victim two disclosed the incident to her cousin in approximately March, 2020.  Sometime between March and May of 2020, victim one disclosed the incident to victim two's sister.

At the second trial, the defendant was tried on the first count of the indictment with his codefendant, victim one's mother (hereinafter, codefendant).  This count charged the defendant and the codefendant with conduct perpetrated against the codefendant's sister (victim three), also in 2015, when victim three was fifteen years old.  In the summer of 2015, victim three and another sister visited the codefendant at her

---

[1] Counts two and three were severed at the defendant's request, and on those counts he was tried alone.  On count one he was tried with his codefendant.

2

home twice.  On their second visit to the codefendant's house that summer, the codefendant told victim three that, at some point in the past, the codefendant had had sexual relations with one of the defendant's cousins and, because the defendant was angry about it, he physically abused the codefendant.  The codefendant cried and showed victim three a bruise on her arm. The codefendant told victim three that "the only way to fix" the situation would be if the defendant "had sex with someone close to her."  The codefendant offered victim three money "and [the codefendant's] wellbeing" to have sex with the defendant. Victim three agreed.  Victim three went into the codefendant's bedroom where the codefendant and the defendant were waiting. The codefendant held one of victim three's legs open with a tight grip while the defendant had sex with her.

Victim three testified that she did not immediately report the incident because the codefendant asked her not to and "out of embarrassment."  A few months later, victim three told her other sister about the incident with the defendant.  Victim three reported the rape to the police in 2016, but recanted in October, 2016.  Victim three testified that at the time that she recanted she was living with the codefendant and that the codefendant begged her not to move forward with the allegations. In May 2020, victim three reported to the police that she wished to move forward with the case.

3

Discussion. 1. Prior bad act evidence. Prior to both trials, the Commonwealth moved in limine to admit evidence of uncharged conduct in the codefendant's bedroom by the defendant against victim two's sister and a close friend of the codefendant, who was around fifteen years old at the time. The defendant encouraged victim two's sister to drink alcohol, take off her shirt and dance for him, and when victim two's sister got sick, he grabbed her and tried to pull her into another bedroom. The defendant also made comments to victim two's sister relating to her virginity and genitals.

The Commonwealth argued, at both trials, that the defendant's conduct with victim two's sister showed a common scheme and pattern of behavior with the indicted conduct, and should be admitted at trial under Mass. G. Evid. § 404(b)(2) (2025). The defendant moved to exclude victim two's sister's testimony, arguing that the testimony would be used as impermissible character evidence, and that even if the testimony were admitted to show a common scheme or pattern of behavior, the probative value of the testimony was outweighed by the risk of unfair prejudice to the defendant. The judge in the first trial allowed the Commonwealth's motion to admit victim two's sister's testimony "in connection with [d]efendant's state of mind and course of conduct towards female children." The judge

4

in the second trial allowed the Commonwealth's motion to admit the testimony for "state of mind, motive, intent, and methods."

On appeal, the defendant argues that the rulings of both judges were abuses of discretion. "We review a trial judge's evidentiary decisions under an abuse of discretion standard." N.E. Physical Therapy Plus, Inc. v. Liberty Mut. Ins. Co., 466 Mass. 358, 363 (2013). "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citations omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). See Nyberg v. Wheltle, 101 Mass. App. Ct. 639, 648 (2022). Because the defendant's objection was preserved at the second trial, we review it for prejudicial error. See Commonwealth v. Reyes, 483 Mass. 65, 78 (2019).

Prior bad act evidence is inadmissible for the purpose of demonstrating a defendant's bad character or propensity to commit the crimes charged. See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). "However, such evidence may be admissible for some other purpose, for instance, to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or pattern of operation" (quotation and citation omitted). Commonwealth v. Almeida, 479 Mass. 562, 568 (2018).

5

See Mass. G. Evid. § 404(b)(2). Both judges allowed victim two's sister's testimony to show a common scheme or pattern. The judge in the first trial found that "[t]he conduct regarding victim [two]'s sister may be considered in connection with Defendant's state of mind and course of conduct toward female children." The judge in the second trial found that the jury could consider the testimony as evidence that (1) the defendant "had a sexual interest in teenage girls;" (2) the defendant's "attraction to teenage girls included girls who had close relationships with [the codefendant];" (3) "the defendants would work together to pursue [the defendant's] sexual interest;" (4) "the defendants used alcohol as part of their plan;" and (5) "the defendants' plan included using [the codefendant]'s bedroom as the site of the sexualized activity." The testimony was properly admitted "for state of mind, motive, intent, and methods" in both trials.

The defendant argues that even if victim two's sister's testimony is admissible to show a common pattern, motive, or scheme, that it is inadmissible because "its probative value is outweighed by the risk of unfair prejudice to the defendant, even if not substantially outweighed by that risk." Crayton, 470 Mass. at 249 n.27. See Mass. G. Evid. § 404(b)(2). Both judges determined that the probative value of victim two's

sister's testimony outweighed the prejudicial effect.[2]  We discern no error from these determinations.  Moreover, both judges gave forceful limiting instructions in their final charge to the jury as to how the jury could use victim two's sister's testimony, mitigating its prejudicial effect.[3]  Given the thoughtful reasoning of both judges, and the limiting instructions given to both juries, we discern no abuse of discretion or prejudicial error in the admission of victim two's sister's testimony.

2.  <u>Hearsay statement admitted under the joint venture exception</u>.  The codefendant's mother testified at the second trial that the codefendant contacted her in 2019 to reestablish their relationship.  The codefendant's mother told the codefendant that, if she wanted to reconcile, the codefendant had to tell the truth about the incident with victim three.  The codefendant and her mother met, and the codefendant told her mother that the defendant had sex with victim three in the

---

[2] At sidebar in the second trial, the judge noted that the defendant's attempt to raise a defense of fabrication reinforced the probative value of victim two's sister's testimony.  He also concluded "that the probative value [of the testimony] is significant and outweighs the prejudicial effect of informing the jury of uncharged noncriminal conduct."

[3] In addition to the limiting instruction in the final charge to the jury, the judge in the first trial gave a contemporaneous limiting instruction on prior bad acts during victim two's sister's testimony.

summer of 2015 "to make it even" because the codefendant had had sex with the defendant's family member. The defendant argues that the codefendant's statements to her mother should not have been admitted against him under Mass. G. Evid. § 801(d)(2)(E) because the statement was not made during a cooperative effort or in furtherance of a joint venture, but that the joint venture had ended.

"[T]he joint venture exception to the hearsay rule does not apply to statements made after the joint venture has ended." Commonwealth v. Winquist, 474 Mass. 517, 522 (2016). However, "[s]tatements made in an effort to conceal a crime, made after the crime has been completed, may be admissible under the joint venture exception because the joint venture [remains] ongoing" (citation omitted). Id. Before admitting testimony under the joint venture exception, "a trial judge must first determine, based on a preponderance of admissible evidence other than the offered statement, that a criminal joint venture existed between the declarant and the defendant and that the offered statement was made during and in furtherance of the joint venture." Commonwealth v. Steadman, 489 Mass. 372, 379 (2022). A statement can be determined to be in furtherance of the joint venture based "on direct or circumstantial evidence that the coventurers had planned to conceal the crime or their involvement in the crime." Commonwealth v. Brown, 474 Mass.

8

576, 587 (2016).  "A judge's determination as to the existence and scope of a joint venture is reviewed under the abuse of discretion standard."  <u>Winquist</u>, 474 Mass. at 521.

Here, the Commonwealth established the existence of a joint venture independently of the codefendant's statements.  The judge then found that the codefendant's mother, who had been "aware of the allegations," and had been involved in having victim three "go[] to the police once," "could have been the one to get this whole thing reactivated."  Contrary to the defendant's contention that the joint venture had ended, the judge concluded that the codefendant "was trying to enlist her mother's loyalty so that she would not speak up."  Where the

statements furthered the efforts to conceal the crime, we discern no abuse of discretion in admitting the testimony.[4]

Judgments affirmed.

By the Court (Meade,
  Hodgens & Allen, JJ.[5]),

Clerk

Entered:  April 13, 2026.

---

[4] The defendant's argument that the admission of the statement the codefendant made to her mother violated his right to confrontation is also unavailing.  "Generally speaking, the statements of joint venturers . . . are deemed nontestimonial under Crawford v. Washington, 541 U.S. 36, 56 (2004)." Winquist, 474 Mass. at 521 n.6 (2016).  See Commonwealth v. Marrero, 436 Mass. 488, 493 (2002) (joint venture exception to hearsay rule does not violate Bruton v. United States, 391 U.S. 123 [1968]).

[5] The panelists are listed in order of seniority.