NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12618

LYNNE BLANCHARD & others[1]  vs.  STEWARD CARNEY HOSPITAL, INC., & others.[2]


Suffolk.     January 8, 2019. - September 23, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.


"Anti-SLAPP" Statute.  Practice, Civil, Motion to dismiss, Discovery, Deposition, Review of interlocutory action. Constitutional Law, Right to petition government.



Civil action commenced in the Superior Court Department on May 24, 2013.

Following review by this court, 477 Mass. 141 (2017), a special motion to dismiss was heard by Joseph F. Leighton, Jr., J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Jeffrey A. Dretler for the defendants.

---

[1] Gail Donahoe, Gail Douglas-Candido, Kathleen Dwyer, Linda Herr, Cheryl Hendrick, Kathleen Lang, Victoria Webster, and Nydia Woods.

[2] Steward Hospital Holdings, LLC; Steward Health Care System, LLC; and William Walczak.

Dahlia C. Rudavsky (Ellen J. Messing also present) for the plaintiffs.

James A.W. Shaw, Jasper Groner, & Donald J. Siegel, for Massachusetts AFL-CIO, amicus curiae, submitted a brief.

LENK, J.  This is the second time the defendants have appealed from the denial of their special motion to dismiss the plaintiffs' defamation claim, pursuant to the "anti-SLAPP" statute, G. L. c. 231, § 59H.[3]  See Blanchard v. Steward Carney Hospital, Inc., 477 Mass. 141 (2017) (Blanchard I).  In Blanchard I, we augmented the anti-SLAPP framework devised in Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 160 n.7, 161 (1998) (Duracraft), vacated the denial of the hospital defendants' motion, and remanded the case for further proceedings.  Blanchard I, supra at 155-161.  On remand, the plaintiff nurses again defeated the special motion to dismiss, this time by establishing -- under the augmented framework -- that the challenged defamation claim is not a "strategic lawsuit against public participation," known as a "SLAPP" suit.  See id. at 157.

On appeal, the hospital defendants maintain that the motion judge erred in applying the augmented Duracraft framework.  They

---

[3] We refer to Steward Carney Hospital, Inc., Steward Hospital Holdings, LLC, Steward Health Care System, LLC, and William Walczak collectively as the "hospital defendants," the "hospital," or the "defendants."  We refer to the plaintiffs collectively as "the plaintiff nurses," the "nurses," or the "plaintiffs."

argue that the judge failed to determine with "fair assurance" that the entirety of the plaintiffs' defamation claim was "colorable" and that it "was not primarily brought to chill the defendants' legitimate petitioning activity." 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 164, 168 (2017). See Blanchard I, 477 Mass. at 160. The hospital defendants also contend that the judge erred in denying their request for discovery in the form of depositions of the nine plaintiff nurses. For their part, the plaintiff nurses contend that the appeal is premature. We transferred the case to this court on our own motion to apply the newly augmented framework. We affirm.[4]

1. Background. Because this is the second time the parties have been before us, we do not repeat the background of the case. See Blanchard I, 477 Mass. at 144-146. In summary, however, in the spring of 2011, all of the registered nurses and mental health counsellors who worked in the adolescent psychiatric unit (unit) of Steward Carney Hospital, Inc., were fired following reports of abuse at the unit. Id. at 142. William Walczak, then president of the hospital, issued statements "both to the hospital's employees and to the Boston Globe Newspaper Co. (Boston Globe), arguably to the effect that

---

[4] We acknowledge the amicus brief submitted by Massachusetts AFL-CIO.

the nurses had been fired based in part on their culpability for the incidents that took place at the unit." Id.

The plaintiffs, nine of the nurses, filed an action against the defendants for, among other things, defamation. Id. Pursuant to G. L. c. 231, § 59H, the anti-SLAPP statute, the hospital defendants filed a special motion to dismiss the defamation claim. Id. at 142-143. A Superior Court judge denied the motion, and the hospital defendants appealed. The Appeals Court reversed in part, see Blanchard v. Steward Carney Hosp., Inc., 89 Mass. App. Ct. 97, 98 (2016), and we granted further appellate review. We concluded that Walczak's statements to hospital employees were not protected petitioning activity, i.e., they had no "plausible nexus to the hospital's efforts to sway [the government's] licensing decision."[5] Blanchard I, 477 Mass. at 152. We therefore affirmed the denial

---

[5] The anti-SLAPP statute, G. L. c. 231, § 59H, defines "a party's exercise of its right of petition" to mean:

"[1] any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceedings; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or [5] any other statement falling within constitutional protection of the right to petition government."

of the anti-SLAPP motion concerning that aspect of the defamation claim.

With respect to the portion of the nurses' defamation claim that concerned Walczak's statements to Boston Globe, however, we concluded that the statements were protected petitioning activities.  Id. at 150-151.  In that regard, we reasoned that it could be "reasonably inferred" that the statements "were intended to demonstrate to [the government] the hospital's public commitment to address the underlying problems at the unit."  Id. at 150.  Although we vacated the order denying the hospital's anti-SLAPP motion, we augmented the Duracraft framework to permit a nonmoving party, here the nurses, to defeat an anti-SLAPP motion by establishing that the claim nonetheless "does not give rise to a 'SLAPP' suit."  Id. at 160. We remanded the case for further proceedings under the augmented framework, where "the burden will shift to the plaintiff nurses to make a showing adequate to defeat the motion."  Id. at 143.

On remand, the judge denied the hospital defendants' request to conduct discovery in the form of depositions of the nine plaintiff nurses.  Then, applying the augmented Duracraft framework to the hospital's anti-SLAPP motion, he considered the pleadings and affidavits in the over-all context of the nurse's defamation claim and the record before him.  Following the path outlined in Blanchard I, he determined that the plaintiff

nurses' defamation claim was colorable.  The judge then concluded that the claim was not a SLAPP suit, because it was not brought primarily to chill the hospital defendants' exercise of the right to petition.

The hospital defendants again appealed from the denial of their anti-SLAPP motion, as is their right.  See Fabre v. Walton, 436 Mass. 517, 521-522 (2002), S.C., 441 Mass. 9 (2004).  Under the augmented Duracraft framework, they argue that the judge failed to apply the "fair assurance" standard articulated in Blanchard I to evaluate the nature of the plaintiff nurses' defamation claim.  They also contend that the judge erred in determining that the plaintiffs' defamation claim is colorable and that it was "not primarily brought to chill [the hospital defendants'] legitimate petitioning activities."  Blanchard I, 477 Mass. at 160.  Finally, the hospital defendants maintain that the judge erred in denying their request for discovery in the form of depositions in support of their special motion to dismiss.  For the reasons described below, we reject each of those claims.

2.  The augmented Duracraft framework.  When an anti-SLAPP motion is filed, the burden-shifting framework devised in Duracraft, and augmented in Blanchard I, applies.  See Blanchard I, 477 Mass. at 147-148, 159-160.  In applying the framework, "the court shall consider the pleadings and supporting and

opposing affidavits stating the facts upon which the liability or defense is based."  G. L. c. 231, § 59H.  See Blanchard I, supra at 160.  We review the judge's ruling for an abuse of discretion or error of law.  See Blanchard I, supra; Baker v. Parsons, 434 Mass. 543, 550 (2001).

a.  Threshold stage.  At the threshold stage, the moving party -- the party alleging it has been the target of a SLAPP suit (here, the hospital defendants) -- bears the burden of establishing by a preponderance of the evidence that the putative SLAPP suit (i.e., the nurses' defamation claim) was "solely based on [the moving party's] own petitioning activities."  Blanchard I, 477 Mass. at 159.  See Cardno ChemRisk, LLC v. Foytlin, 476 Mass. 479, 484 (2017).  There is no dispute, in this case, that the hospital defendants successfully met their burden at the threshold stage.  See Blanchard I, supra at 151.

b.  Second stage.  If the threshold is crossed, the burden shifts to the nonmoving party (here, the plaintiff nurses) to demonstrate that the anti-SLAPP statute does not require dismissal of the claim.  See Blanchard I, 477 Mass. at 159-160.  As augmented in Blanchard I, there are two alternative paths that the nonmoving party may use to satisfy this second stage burden.  See id. at 160.  Evidence that is insufficient for

purposes of the first path may, of course, be considered in connection with the second path.

i.  First path.  The parameters of the first path echo the language of the anti-SLAPP statute.  See Duracraft, 427 Mass. at 165.  As outlined in Duracraft, the nonmoving party (here, the plaintiff nurses) must establish by a preponderance of the evidence, see Baker, 434 Mass. at 544, that "(1) the moving party's [(the hospital's)] exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's [(the hospital's)] acts caused actual injury to the responding party [(the nurses)]."  G. L. c. 231, § 59H.  Proving that the moving party's petitioning activity was, in essence, a sham presents a "high bar."  Blanchard I, 477 Mass. at 156 n.20.  The nurses, in this case, do not attempt to make that showing.  Id.

ii.  Second path.  Under the newly augmented Duracraft framework, a nonmoving party (here, the nurses) that cannot demonstrate that the moving party (here, the hospital defendants) engaged in sham petitioning nonetheless may defeat a special motion to dismiss its claim by following an alternative second path.  See Blanchard I, 477 Mass. at 160.  This second path requires the nonmoving party (here, the nurses) to demonstrate, "such that the motion judge may conclude with fair assurance," id., two elements:  (a) that its suit was

"colorable"; and (b) that the suit was not "'brought primarily to chill' the special movant's [(the hospital's)] legitimate exercise of its right to petition," i.e., that it was not retaliatory. Id. at 159-161, quoting Duracraft, 427 Mass. at 161. See Sandholm v. Kuecker, 2012 IL 111443, ¶ 57 (cited in Blanchard I).[6] Following this path, we first address the fair assurance standard announced in Blanchard I. Applying that standard, we then conclude that the motion judge neither erred nor abused his discretion in determining that the plaintiff nurses established both elements required for the second path, and that the defamation claim therefore was not a SLAPP suit.

A. Fair assurance standard. The judge's task with regard to the second path is to assess the "totality of the circumstances pertinent to the nonmoving party's asserted primary purpose in bringing its claim," and to determine whether the nonmoving party's claim constitutes a SLAPP suit. Blanchard I, 477 Mass. at 159, 160 ("a claim that is not a 'SLAPP' suit

_____

[6] Under the Illinois anti-SLAPP act, 735 Ill. Comp. Stat. 110/1, it is the moving party's burden to demonstrate that the nonmoving party's suit is both "meritless" and "retaliatory." See Chadha v. North Park Elementary Sch. Ass'n, 2018 ILL App (1st) 171958, ¶¶ 91-93, and cases cited. Unlike the Illinois anti-SLAPP act, the Massachusetts anti-SLAPP act allocates the burden to the nonmoving party, here the plaintiff nurses. Among other things, the facts relevant to the determination are within the nonmoving party's sphere of knowledge, a consideration that facilitates expedited resolution of the special motion to dismiss at an early stage of the proceedings.

will not be dismissed").  We ask the judge to be "fair[ly] assur[ed]" in his or her conclusion.  Id. at 160.  This requires the judge to be confident, i.e., sure, that the challenged claim is not a "SLAPP" suit.  See Commonwealth v. Lodge, 431 Mass. 461, 468 (2000) (applying fair assurance standard, and concluding "confident" verdict would have been same); Commonwealth v. Knowles, 92 Mass. App. Ct. 617, 624 (2018) (where "confident" outcome would have been same, court can say with "fair assurance" that error was not prejudicial); Commonwealth v. Young, 22 Mass. App. Ct. 237, 241-242 (1986) ("fair assurance" standard met where court "sure" result would have been same).

For purposes of this second path, an anti-SLAPP motion to dismiss will be denied if the motion judge concludes, with fair assurance, that the challenged claim is both colorable and not brought primarily to chill the moving party's legitimate exercise of its right to petition.[7]  See Blanchard I, 477 Mass. at 159-161.  It is the nonmoving party (here, the plaintiff nurses) that bears the burden of proof.

---

[7] Although the motion judge must be fairly assured in his or her conclusion, talismanic words are not required.  Here, the judge's citation to Blanchard I, discussion of the newly augmented Duracraft framework, and application of the facts to that framework make it readily apparent that he applied the correct standard.

We recognize that this fair assurance standard typically has been applied in the context of criminal proceedings to evaluate whether a preserved error is nonprejudicial.[8]  See, e.g., Commonwealth v. Helfant, 398 Mass. 214, 223-224 (1986) ("fair assurance" achieved where court concludes any prejudice arising from error "did not possibly weaken [defendant's] case in any significant way").  We employ it in the anti-SLAPP context both because the same degree of assuredness is required and because an analogous contextual assessment is involved.

In both contexts, the court is asked to "ponder[] all that happened without stripping [the challenged claim] from the whole."  Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).  In an anti-SLAPP context, the motion judge considers "[t]he course and manner of proceedings, the pleadings filed, and affidavits 'stating the facts upon which the liability or defense is based.'"  Blanchard I, 477 Mass. at 160, quoting G. L. c. 231, § 59H.  If the judge determines that the nonmoving party's claim "was not primarily brought to chill the special movant's [(the hospital's)] legitimate petitioning activities," but instead was brought to seek redress for harm caused by the

---

[8] The fair assurance standard has, however, also been applied in other contexts.  See Abbott v. John Hancock Mut. Life Ins. Co., 18 Mass. App. Ct. 508, 522 (1984) (concluding with "fair assurance" that findings adopted by judge reflect independent judgment).

moving party's (the hospital's) conduct, then the anti-SLAPP motion to dismiss the nonmoving party's (the nurses') claim properly is denied. Blanchard I, supra.

In making that determination, the judge may consider whether the case presents as a "classic" or "typical" SLAPP suit, i.e., whether it is a "lawsuit[] directed at individual citizens of modest means for speaking publicly against development projects." Baker, 434 Mass. at 548-549 & n.12, quoting Duracraft, 427 Mass. at 161. See Blanchard I, 477 Mass. at 156 & n.21; Cardno ChemRisk, LLC, 476 Mass. at 480-482. Although we recognize that the anti-SLAPP statute is not limited in application to "typical" cases, see Baker, supra at 548-549, the presence or absence of the classic indicia may be considered.

Other factors that may be helpful in distinguishing an ordinary lawsuit from a SLAPP suit include, by way of example, whether the lawsuit was commenced close in time to the petitioning activity;[9] whether the anti-SLAPP motion was filed promptly;[10] the centrality of the challenged claim in the context

---

[9] A relatively close proximity in time between the petitioning activity and the nonmoving party's claim (or threat to bring the claim) may suggest that the claim was retaliatory and intended to chill further participation in petitioning.

[10] The anti-SLAPP statute is intended to secure early, inexpensive dismissal of SLAPP suits. When a special motion to dismiss is filed beyond "sixty days of the service of the

of the litigation as a whole, and the relative strength of the nonmoving party's claim;[11] evidence that the petitioning activity was chilled;[12] and whether the damages requested by the nonmoving party, such as attorney's fees associated with an abuse of process claim, themselves burden the moving party's exercise of the right to petition.[13]  Cf. Commonwealth v. Torres, 437 Mass. 460, 465 (2002) (considering similar factors in nonprejudicial error analysis).  See also Blanchard I, 477 Mass. at 156 & n.21.

We recognize that these factors are not exhaustive; that no single factor is dispositive; and that not every factor will

---

complaint," as the anti-SLAPP statute contemplates, the judge may consider whether the delay in asserting the claim supports an inference that the moving party does not regard the claim as a SLAPP suit and that the nonmoving party likewise did not intend it as such.  See G. L. c. 231, § 59H.

[11] While the determination whether each individual claim is based solely on petitioning activity is the focus of Duracraft's threshold inquiry, at the second stage of the inquiry, the judge may consider the significance of that particular claim in the context of the litigation as a whole in assessing whether it was brought primarily to chill petitioning activity.

[12] Evidence that the moving party's petitioning activity was or was not affected by the nonmoving party's lawsuit may be considered.

[13] Where a nonmoving party asserts a claim predicated on the moving party's petitioning activity, and the claim is one for which an award of attorney's fees and costs may be available, the judge may consider whether the specter of such an award suggests an intent to forestall petitioning activity.  Cf. Van Liew v. Stansfield, 474 Mass. 31, 40 (2016) (defense costs for improper petitioning activity constitute "actual injury" for purposes of G. L. c. 231, § 59H).

apply in every case.  We leave it to the motion judge to consider and weigh these and other factors as appropriate, in light of the evidence and the record as a whole.  It rests within the exercise of the judge's sound discretion to determine, based on that assessment, whether he or she is fairly assured that the challenged claim is not a SLAPP suit.  If the claim is not a SLAPP suit, then, under the augmented Duracraft framework, the claim "will not be dismissed."  Blanchard I, 477 Mass. at 159.

Applying this standard to the second path of the second stage Duracraft framework, we discern no abuse of discretion in the judge's assuredness that the plaintiff nurses' defamation claim was not a SLAPP suit.  As described infra, the judge did not err in determining either that the nurses' defamation claim was colorable or that it was not brought for retaliatory purposes.

B.  Colorable claim.  "SLAPPs are by definition meritless suits."  Duracraft, 427 Mass. at 164, quoting Barker, Common Law and Statutory Solutions to the Problems of SLAPPs, 26 Loy. L.A. L. Rev. 395, 399 (1993).  Therefore, "[a] necessary but not sufficient factor in this analysis will be whether the nonmoving party's claim at issue is 'colorable or . . . worthy of being presented to and considered by the court."  Blanchard I, 477 Mass. at 160-161, quoting L.B. v. Chief Justice of the Probate &

Family Court Dep't, 474 Mass. 231, 241 (2016). In essence, this requires consideration whether the claim "'offers some reasonable possibility' of a decision in the party's favor." Blanchard I, supra at 161, quoting Commonwealth v. Levin, 7 Mass. App. Ct. 501, 504 (1979).

This "colorable" concept of merit has been applied in a variety of contexts, see L.B., 474 Mass. at 241 & n.17 (citing cases), including the type of early assessment required here. See General Motors Corp., petitioner, 344 Mass. 481, 482 (1962) ("A meritorious case means one that is worthy of presentation to a court, not one which is sure of success"). It is a "lighter, less technical burden" of presenting a claim where threshold considerations are implicated, see L.B., supra at 241, 242, at a stage in the litigation when discovery typically has not yet occurred. It properly balances the parties' respective rights with the Legislature's purpose in expediting dismissal of "meritless" SLAPP suits. See Duracraft, 427 Mass. at 161.

In this case, we discern no abuse of discretion in the judge's determination that the plaintiff nurses' defamation claim was "colorable."[14] Following investigation of a report of

---

[14] The plaintiff nurses are not required to demonstrate, as the hospital defendants contend, that their defamation claim has a "reasonable likelihood of success" in comparison to the hospital defendants' defenses. The anti-SLAPP remedy is not intended as a dress rehearsal for summary judgment or trial.

an employee's alleged sexual assault on a patient, the hospital president's statements published in the Boston Globe implicated the entire "staff of [the hospital's] adolescent psychiatry unit" in "serious concerns about patient safety and quality of care," and described the unit as "not functioning properly." The plaintiffs were nine of only thirteen nurses who worked on the unit. The judge fairly characterized the statements as "implicat[ing] the plaintiffs in patient abuse and describ[ing] their work as unacceptable and as contributing to an unsafe medical environment." If the statements falsely implicated the plaintiff nurses, as they claim, the statements are of a type that reasonably discredit the plaintiffs. See Draghetti v. Chmielewski, 416 Mass. 808, 811 (1994).

The colorability of the nurses' claim additionally is supported by the fact that, by the time the complaint was filed, one group of the plaintiffs had prevailed in another forum -- a labor arbitration where their union had filed grievances challenging their employment terminations. The arbitrator found that the hospital did not establish that the individual nurses committed dischargeable misconduct, and that the hospital violated the collective bargaining agreement by discharging them. The arbitrator ordered that any allegations or findings of wrongdoing be expunged from the nurses' personnel files. He also ordered that the nurses be reinstated with back pay and

benefits.[15]  Cf. Fabre, 436 Mass. at 524 (issuance of G. L. c. 209A order conclusive evidence, for purposes of second stage, first path, that the moving party's petitioning not "devoid of any reasonable factual support or arguable basis in law").  Although the hospital defendants had challenged the award in Federal court, at the time they brought the defamation claim, the plaintiff nurses had achieved a measure of success, which lends weight to its colorability.

C.  Nonretaliatory claim.  In addition to showing that its claim is colorable for purposes of the second path, the nonmoving party (here, the plaintiff nurses) also must demonstrate that the claim is not "retaliatory," see Fabre, 436 Mass. at 520, i.e., that it is not a strategic suit "primarily brought to chill the special movant's [(the hospital's)] legitimate petitioning activities."  Blanchard I, 477 Mass. at 160.  See Matter of the Discipline of an Attorney, 442 Mass. 660, 673-674 (2004).  This requires the nonmoving party to establish that the "primary motivating goal in bringing its claim, viewed in its entirety, was 'not to interfere with and burden [the hospital] defendants' . . . petition rights, but to seek damages for the personal harm to [the plaintiff nurses]

_____

[15] Before the labor arbitration for the remaining plaintiffs commenced, all nine of the plaintiff nurses entered into a settlement agreement with the hospital.

from [the hospital] defendants' alleged . . . [legally transgressive] acts." Blanchard I, supra, quoting Sandholm, 2012 IL 111443, ¶ 57.

Although the standard is expressed in subjective terms, a party's intent ordinarily may be inferred from objective facts and circumstances. See Parreira v. Commonwealth, 462 Mass. 667, 670-671 (2012) (intent inferred "from objective facts and circumstances"); McLaughlin v. Selectmen of Amherst, 422 Mass. 359, 364 (1996) (parties' intent ascertained from relevant instrument and objective circumstances). To determine the "primary motivating goal" of the nurses in this case, the motion judge was required to evaluate their "asserted primary purpose in bringing [their] claim," Blanchard I, 477 Mass. at 160, in light of the objective facts presented and any reasonable inferences that may be drawn from them, see id. at 149. This includes consideration of the "course and manner of proceedings," the pleadings filed, and the affidavits providing "objective indicia of a party's intent." Id. at 149, 160. Cf. Matter of the Discipline of an Attorney, 442 Mass. at 674 (objective not to intimidate exercise of rights of petitioning but, rather, to impose professional discipline for violation of rules of professional conduct). If the judge, considering each claim as a whole, and holistically in light of the litigation, is fairly assured that "each challenged claim does not give rise

to a 'SLAPP' suit," then the special motion to dismiss the plaintiff nurses' defamation claim properly is denied.  See Blanchard I, supra at 160 & n.25.

The nine plaintiff nurses maintained that their defamation claim is a "legitimate suit based on real injuries and damages (lost earnings, persistent unemployment or underemployment, humiliation and other emotional distress, loss of reputation), and not a SLAPP suit designed to chill defendants' petitioning." The five-count complaint named (in relevant part) the then president of the hospital where they had worked, the hospital itself, and related corporate entities.  Only a portion of one of those counts -- alleging defamation based on the hospital president's statements to the Boston Globe -- implicated the hospital defendants' petitioning activity.  At the time the complaint was "brought," despite the labor arbitration award, the nurses had not been reinstated to their employment, and had not been compensated for lost earnings or emotional or reputational injuries.

After considering the defamation claim, in light of the pleadings, affidavits, and the record as a whole, the motion judge concluded that the portion of the plaintiff nurses' defamation claim that rested on the statements published in the Boston Globe "was not primarily brought to chill the [hospital defendants'] legitimate petitioning activity."  Blanchard I, 477

Mass. at 160. The judge was warranted in his assurance that the nurse's defamation claim was not a SLAPP suit.

In reaching his decision, the judge considered the extent of the plaintiff nurses' cooperation with the investigation into the reports of abuse at the hospital unit; evidence of the plaintiff nurses' "restraint" in commenting publicly during the investigation of the hospital unit; and that the defamation claim rested both on statements made by the hospital defendants that were not petitioning activity, as well as on statements that were. The judge also considered the conflicting evidence about whether economic considerations rather than seeking redress for reputational damage, emotional distress, and other harm may have motivated the plaintiff nurses to bring their claim. In the end, there was sufficient objective evidence to permit the judge to conclude with fair assurance that the nurses' primary goal in bringing the defamation action was not to chill the hospital defendants' right to petition, or to interfere with the defendants' right to do so. The plaintiff nurses met their burden of establishing that their defamation claim was not a SLAPP suit.

Although we affirm the denial of the hospital defendants' special motion to dismiss, we pause briefly to address two other points. We conclude that the motion judge did not err in denying the hospital defendants' request for discovery in the

form of depositions of the nine plaintiff nurses.  We also conclude that the doctrine of present execution continues to apply to the denial of an anti-SLAPP motion under the augmented Duracraft framework.

3.  Discovery request.  The purpose of the anti-SLAPP statute is to provide "a procedural remedy for early dismissal" of meritless SLAPP suits, Duracraft, 427 Mass. at 161, with a "specific goal of resolving 'SLAPP' litigation quickly with minimum cost," Office One, Inc. v. Lopez, 437 Mass. 113, 126 (2002).  That purpose would be ill-served if, as the hospital defendants contend, discovery were required to ascertain each plaintiff nurse's subjective motivation in filing the targeted claim.  We reject that argument and conclude that the motion judge did not abuse his discretion in denying the request for depositions of each of the plaintiff nurses.

The anti-SLAPP statute "contemplates that a special motion to dismiss will be made within sixty days of the service of the complaint, and that once made, all discovery will be stayed until the motion is decided."  Donovan v. Gardner, 50 Mass. App. Ct. 595, 601 (2000).  See Cardno ChemRisk, LLC, 476 Mass. at 483-484 (special motion to dismiss may be filed prior to completing discovery).  Not only can such a motion "be brought prior to engaging in discovery," Blanchard I, 477 Mass. at 147,

but the statute expressly provides that any associated discovery is permitted only by leave of court, see G. L. c. 231, § 59H.

Unnecessary discovery, like strategic delays in filing anti-SLAPP motions, unfairly burdens the nonmoving party, because the "attorney's fees and costs are mandatory for successful special motions, and the amount of the award need not be limited to legal work incurred in bringing the special motion itself." Office One, Inc., 437 Mass. at 126. See also Donovan, 50 Mass. App. Ct. at 602. See also Blanchard I, 477 Mass. at 159 ("expedited special motion to dismiss . . . tak[es] place early in the litigation and with limited discovery available only by leave of court").

Because discovery at this stage generally is inconsistent with the expedited procedural protections established by the anti-SLAPP statute, judges should be parsimonious in permitting it. We recognize that "there may be exceptional cases where discovery may be required before the moving party is in a position to learn the facts that indicate that a special motion to dismiss is warranted," Burley v. Comets Community Youth Ctr., Inc., 75 Mass. App. Ct. 818, 822 (2009), or to test the veracity of factual allegations. See Benoit v. Frederickson, 454 Mass. 148, 155 (2009) (Cordy, J., concurring). But this is not such a case.

The hospital defendants allege that discovery is necessary to ascertain the plaintiff nurses' subjective motives in bring the defamation claim.  As we have said, however, the judge's task is to evaluate whether the reasons they asserted were supported by reasonable inferences that could be drawn from the objective facts presented in the pleadings and affidavits, in light of the record as a whole.  The anti-SLAPP statute is meant to shield a litigant from a meritless SLAPP attack, not to provide an arsenal of weapons, of which discovery might be one, to attack ordinary lawsuits.  In this case, the litigation has been ongoing for approximately six years and, during that period, the parties have engaged in substantial paper discovery.  In the circumstances here, there was no abuse of discretion in the motion judge's decision to deny the hospital defendants' request for discovery in the form of depositions of the nine plaintiff nurses.

4.  <u>Doctrine of present execution</u>.  Finally, we address briefly the plaintiff nurses' contention that the doctrine of present execution should not apply to an anti-SLAPP motion denied under the augmented portion of the <u>Duracraft</u> framework. We disagree.  Under the doctrine of present execution, an interlocutory order may be immediately appealed from "if the order will interfere with rights in a way that cannot be remedied on appeal from the final judgment."  <u>Fabre</u>, 436 Mass.

at 521.  The anti-SLAPP statute "provides broad protections for individuals who exercise their right to petition from harassing litigation and the costs and burdens of defending against retaliatory lawsuits."  Id. at 520.

Similar to the "protections afforded public officials by the doctrine of governmental immunity," the anti-SLAPP statute is intended to "immunize parties from claims 'based on' their petitioning activities."  Id., quoting Duracraft, 427 Mass. at 167.  The protections accorded by the statute "are in large measure lost if the petitioner is forced to litigate a case to its conclusion before obtaining a definitive judgment through the appellate process."  Fabre, supra at 521.  See Benoit, 454 Mass. at 151-152.

We acknowledge the plaintiff nurses' claim that the arguments raised by the hospital defendants are not "collateral" to the appeal in the manner often associated with other applications of the doctrine of present execution.  See Elles v. Zoning Bd. of Appeals of Quincy, 450 Mass. 671, 674 (2008).  The doctrine of present execution, however, applies to anti-SLAPP cases in order to preserve a moving party's "immunity" from being required to litigate a SLAPP suit.  See Benoit, 454 Mass. at 151-152.  The determination whether the nonmoving party's claim is "colorable" at the second stage, second path, like the determination whether a moving party's petitioning claim is

"devoid of merit" at the second stage, first path, is not a judgment on the merits of the claim. See id. at 158 n.3 (Cordy, J., concurring). It is an assessment relevant only to the determination whether the anti-SLAPP statute does or does not apply. Regardless of the arguments raised on appeal, interlocutory appeals from the denial of anti-SLAPP motions are governed by the doctrine of present execution.[16]

5. Conclusion. An ordinary lawsuit is not a SLAPP suit. See Matter of the Discipline of an Attorney, 442 Mass. at 673 (statute not intended to "be misused to allow motions for expedited dismissal of nonfrivolous claims"). In this case, the motion judge did not err in concluding that the plaintiff nurses' colorable defamation claim was not a SLAPP suit because it was not brought with the primary motivating goal of chilling the hospital defendants' right to petition. Accordingly, we affirm the denial of the hospital defendants' special motion to dismiss. We also affirm the denial of the hospital defendants' request for discovery. The matter is remanded to the Superior Court for further proceedings.

---

[16] In keeping with the Legislature's intent that anti-SLAPP motions be resolved expeditiously, and with minimum cost, see Office One, Inc., 437 Mass. at 126, parties may seek leave of the appellate court to expedite an interlocutory appeal. We caution, however, that an appeal that is "frivolous, immaterial or intended for delay" is subject to sanction. See G. L. c. 211, § 10; G. L. c. 211A, § 15; Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019).

So ordered.