NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-810

BOARD OF SELECTMEN OF DUXBURY

vs.

WEBSTER POINT VILLAGE, LLC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The town of Duxbury (town), acting by and through its board of selectmen (board), brought this action against developer Webster Point Village, LLC (WPV), raising breach of contract and related claims.[1]  A judge of the Superior Court denied WPV's special motion to dismiss brought under the "anti-SLAPP" statute.  See G. L. c. 231, § 59H.  WPV appeals from the adverse ruling on an interlocutory basis under the doctrine of present execution.  See Blanchard v. Steward Carney Hosp., Inc., 483 Mass. 200, 212-213 (2019) (Blanchard II).  We affirm.

---

[1] The board's complaint contained the following claims and requests for equitable relief:  declaratory judgment (count 1), breach of contract (count 2), breach of the implied covenant of good faith and fair dealing (count 3), promissory estoppel (count 4), quantum meruit (count 5), and injunctive relief (count 6).

Background.  We recite only so much of the long history of this case that is necessary to decide the appeal.  On June 21, 2006, following a remand from the housing appeals committee (HAC), the town's zoning board of appeals (ZBA) issued an amended comprehensive permit (2006 amended comprehensive permit) to Delphic Associates, LLC (Delphic), WPV's predecessor in interest.  The 2006 amended comprehensive permit authorized the construction of an affordable housing project, required work to commence within one year, and was subject to numerous conditions, including a conservation restriction condition (2006 conservation restriction condition).[2]

Following the lapse of the permit, lengthy litigation ensued over Delphic's request to reinstate it, culminating in a Superior Court judgment in Delphic's favor.  After the ZBA noticed its appeal from the judgment to this court, four parties (the board, the ZBA, Delphic, and WPV) entered into a settlement

_____

[2] The ZBA granted the 2006 amended comprehensive permit subject to 106 conditions, including condition twelve, which included, as herein relevant, the following provisions:  "Prior to any grading, land disturbance, issuance of any building permit and construction of any structure or infrastructure, [Delphic] shall execute and cause to be recorded at the Plymouth County Registry of Deeds, a Conservation Restriction pursuant to G. L. c. 184, s. 31, clearly identifying the land areas noted on the approved plans as 'Restricted Area' to be left in their natural vegetative state with no provisions for site alteration. . . . The Conservation Restriction required by this paragraph shall be deemed an independent condition and requirement from that or those required by the Commonwealth's Natural Heritage and Endangered Species Act."

2

agreement and mutual release (2012 settlement agreement) whereby Delphic and WPV agreed not to request modifications of certain conditions.[3]

Further proceedings required by the 2012 settlement agreement, see note 3, supra, were held before the ZBA, which issued a modified comprehensive permit (2015 modified comprehensive permit) to WPV in August 2015 in light of the number of modifications requested and changed circumstances.[4] Like the 2006 amended comprehensive permit, the 2015 modified

---

[3] The 2012 settlement agreement provided, as herein relevant, that "for good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned Parties agree . . . [that] the [ZBA] shall . . . withdraw the Appeal . . . [and] [u]pon dismissal of this appeal and subject to any future appeals this Amended Comprehensive Permit shall become final." As part of the settlement, the parties agreed that "Delphic and/or WPV . . . shall not request modification from the [ZBA] or from the HAC of . . . [sixty-nine conditions of the 2006 amended comprehensive permit, including the 2006 conservation restriction condition]." The agreement stated that it was "negotiated in good faith and constitutes a fair and reasonable resolution of the Parties' dispute." The parties also agreed that Delphic and/or WPV would submit a request for modification of the 2006 amended comprehensive permit to bring it in line with the requirements of Zoning Bd. of Appeals of Amesbury v. Housing Appeals Comm., 457 Mass. 748 (2010).

[4] In its decision, the ZBA stated that the 2015 modified comprehensive permit superseded the 2006 amended comprehensive permit and an earlier comprehensive permit and that those "previous permits shall have no further force or effect." The ZBA further stated that the 2012 settlement agreement "shall remain in full force and effect except as specifically superseded by [the] Modified Comprehensive Permit" and that "[n]othing in [the] Modified Comprehensive Permit waives the [ZBA's] argument that other conditions that WPV agreed not to modify in that [settlement] [a]greement remain non-modifiable."

3

comprehensive permit required WPV, as a condition of building, to record a conservation restriction (2015 conservation restriction condition). The language of that condition was substantially similar to the 2006 conservation restriction condition.

In November 2020, WPV asked the HAC to eliminate the 2015 conservation restriction condition, claiming that the condition could not be satisfied, that the 2012 settlement agreement was void insofar as it prohibited WPV from requesting modifications of certain conditions, and that, moreover, the 2012 settlement agreement did not prohibit WPV from requesting that the board or the HAC modify the 2015 conservation restriction condition. In March 2021, the board notified WPV that its request to the HAC violated the 2012 settlement agreement. After the HAC determined that WPV's request was not properly before it, WPV asked the ZBA to eliminate the 2015 conservation restriction condition as an "insubstantial change" to the 2015 modified comprehensive permit. Shortly before the ZBA denied the request, the board filed this action; WPV responded with a special motion to dismiss. Applying the burden-shifting, augmented Duracraft framework, see Reichenbach v. Haydock, 92 Mass. App. Ct. 567, 572 (2017), a judge denied the motion, concluding that (1) WPV failed to meet its stage one burden and

4

(2) even if WPV met its burden, the board prevailed at the second stage.

Discussion. We consider de novo WPV's showing at the first stage but review for abuse of discretion or error of law the motion judge's ruling concerning the board's showing at the second stage. See Reichenbach, 92 Mass. App. Ct. at 572 (de novo first stage); Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 160 (2017) (Blanchard I). At the first stage of the framework, the moving party and alleged target of a SLAPP suit (here, WPV) bears the burden of establishing "through pleadings and affidavits that the claims against it are based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities" (quotations and citation omitted). Blanchard I, supra at 147.

If the special movant meets its threshold burden, the nonmoving party may defeat the motion in one of two ways at the second stage of the framework. Under the first and less traveled path, the nonmoving party may prevail by showing, "by a preponderance of the evidence, that the special movant's petitioning activity was devoid of any reasonable factual or legal support and that it caused the nonmoving party actual injury." Cardno ChemRisk, LLC v. Foytlin, 476 Mass. 479, 484 (2017). See Blanchard II, 483 Mass. at 204, quoting Blanchard I, 477 Mass. at 156 n.20 ("[p]roving that the moving party's

5

petitioning activity was, in essence, a sham presents a 'high bar'").  If, and only if, the nonmoving party fails to make the showing required under the first path of this second stage, the judge must then consider the nonmovant's showing under the second stage's second path.  See 477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 519 (2019) (Harrison II).  Under this second path, the nonmoving party may withstand the special motion to dismiss by "demonstrat[ing], such that the motion judge may conclude with fair assurance . . . two elements:  (a) that its suit was colorable; and (b) that the suit was not brought primarily to chill the special movant's . . . legitimate exercise of its rights to petition, i.e., that it was not retaliatory (quotations and citation omitted).  Blanchard II, supra.

We agree that WPV's conduct in seeking the removal of the 2015 conservation restriction condition from both the HAC and the ZBA was protected petitioning activity, and that the town's claims in this action are based on WPV's petitioning activity.  See G. L. c. 231, § 59H (defining "party's exercise of its right of petition" to "mean any written . . . statement . . . submitted to a legislative, executive, or judicial body, or any other governmental proceeding").  See also Cardno ChemRisk, LLC, 476 Mass. at 484-485.  However, to meet its stage one burden, WPV was required to show that the board's claims were based

<u>solely</u> on WPV's petitioning activities.  WPV's motion foundered on this requirement.

It is well established that "[m]any preexisting legal relationships may properly limit a party's right to petition, including enforceable contracts in which parties waive rights to otherwise legitimate petitioning."  <u>Duracraft Corp</u>. v. <u>Holmes Prods. Corp</u>., 427 Mass. 156, 165 (1998).  Here, as part of the 2012 settlement agreement, WPV waived its future petitioning rights with respect to the 2006 and 2015 conservation restriction conditions.[5]  See <u>id</u>. at 165-166 ("quintessential example of [proper] waiver is a settlement agreement, in which a party releases legal claims against an adversary that otherwise properly could be prosecuted by petitioning the court").  These facts establish that the board had a "substantial basis other than or in addition to the petitioning activities" for bringing this lawsuit.[6]  <u>Blanchard I</u>, 477 Mass. at 147, quoting <u>Fustolo</u> v.

---

[5] For reasons that we explain, we are unpersuaded by WPV's argument that it did not waive its future petitioning rights with respect to the 2015 conservation restriction condition.

[6] Whether the board's claims turn out to be ultimately "meritless," as WPV maintains, is a matter beyond the purview of the stage one inquiry.  See <u>Burley</u> v. <u>Comets Community Youth Ctr., Inc</u>., 75 Mass. App. Ct. 818, 822 (2009) (question for judge at stage one concerns "only the nature of the conduct alleged by the plaintiff . . . and not the merits of the case").  See also <u>477 Harrison Ave., LLC</u> v. <u>JACE Boston, LLC</u>, 477 Mass. 162, 168 (2017) (<u>Harrison I</u>) ("In assessing the conduct that is complained of, a judge considers only the allegations that are relevant to the discrete causes of action brought").

Hollander, 455 Mass. 861, 865 (2010).  See Harrison II, 483 Mass. at 520 ("claim for breach of contract [or breach of the implied covenant of good faith and fair dealing] sometimes may present a substantial basis other than the petitioning activity itself for purposes of the anti-SLAPP act"); 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 171 (2017) (Harrison I) (where plaintiff alleged that defendants filed two false insurance claims, substantial nonpetitioning basis for its G. L. c. 93A claim existed and thus defendants could not show claim was based solely on their petitioning activity); Duracraft Corp., supra at 168 (nondisclosure agreement constituted substantial basis for plaintiff's lawsuit other than petitioning activity and defeated special motion to dismiss).

In fact, in its 2020 modification request to the HAC, WPV reserved its rights to bring a lawsuit to have the portions of the 2012 settlement agreement that prohibited it from making modification requests declared void.  As WPV candidly acknowledged to the HAC, the other parties to the 2012 settlement agreement had the same constitutionally protected right to petition the Superior Court to enforce it.[7]  Having

_____

[7] WPV stated that it did not "believe it should be WPV's burden, or would serve WPV's interests, to bring such an action at this point."  WPV expressed its hope that the HAC would simply allow the changes, and acknowledged that if the HAC did so, some other entity, including the ZBA, could then bring a legal claim charactering WPV's request "as a breach of contract."  WPV's

taken this position with the HAC and admitted the existence of an actual controversy between the parties, it is inconsistent for WPV to now argue that the board's lawsuit for breach of contract was based solely on WPV's petitioning activities.

Even assuming for the sake of argument that WPV made the required showing at the first stage, the judge neither erred nor abused his discretion in concluding that the board established both elements required by the second stage second path.[8]  First, we discern no abuse of discretion in the judge's determination that the board's primary breach of contract claim is "colorable," which in this context means "worthy of being presented to and considered by the court" and "offer[ing] some reasonable possibility of a decision in the party's favor" (quotations and citations omitted).  Blanchard II, 483 Mass. at

_____

next sentence foreshadowed this very proceeding:  "If the HAC or the respective boards believe the terms of [the 2012 settlement agreement] effectively prohibit any modification of the [2015 conservation restriction] condition, then WPV expects that one way or another this issue will be decided in Superior Court, which has jurisdiction over interpretation and enforcement of contracts."

[8] We note that the judge skipped the first analytical path of the second stage.  See Harrison II, 483 Mass. at 519.  On appeal, the board does not purport to meet the "high bar" of the first path.  Where WPV does not claim error by the judge in this regard, nothing turns on the judge's omission.  The actual injury, if any, sustained by the board from WPV's modification requests was a required element of proof for the board with respect to the first path, but not for the second path, and thus, we need not address it.  See id. at 518.

9

207-208.  The colorability of the claim is supported by the plain language of the 2012 settlement agreement and the comprehensive permits.  As part of the 2012 settlement agreement, WPV expressly agreed that it would not seek modifications of sixty-nine conditions contained in the 2006 amended comprehensive permit from either the ZBA or the HCA. The relevant portions of the 2012 settlement agreement regarding the nonmodifiable conditions were not "specifically superseded" by the 2015 modified comprehensive permit, see note 4, supra, and thus remained in full force and effect,[9] and as the judge noted, the substance of the 2006 and 2015 conservation restriction conditions was "largely the same."  Notwithstanding the previous agreement, in 2020 and 2021, WPV submitted requests for the elimination of a covered condition -- to both the HCA and the ZBA.

As for the second element, we discern no abuse of discretion in the judge's determination that, based on the totality of the circumstances, the board's claims do not amount to a SLAPP suit (i.e., brought primarily to chill WPV's legitimate petitioning activities).[10]  See Blanchard II, 483

---

[9] Moreover, the 2015 modified comprehensive permit expressly preserved the ZBA's rights to insist on WPV's adherence to the conditions listed in the 2012 settlement agreement.

[10] To the extent that WPV seizes on a few words in the judge's decision to show that the judge did not apply the correct fair assurance standard, we find WPV's arguments unpersuasive.

Mass. at 209-210.  The judge could reasonably have inferred that the board, which waived its appellate rights in consideration of WPV's promises in the settlement agreement, was aggrieved by WPV's subsequent requests to have the 2015 conservation restriction condition eliminated, and through this action was seeking damages for the harm caused by WPV's legally transgressive acts.[11]

> Order dated May 25, 2022, denying special motion to dismiss affirmed.
>
> By the Court (Wolohojian, Singh & Hand, JJ.[12]),
>
> *Joseph F. Stanton*
>
> Clerk

Entered: August 8, 2023.

---

[11] WPV's request for attorney's fees is denied.
[12] The panelists are listed in order of seniority.

11