NYBERG vs. WHELTLE, 101 Mass. App. Ct. 639

 
 JONATHAN NYBERG & another [Note 1] vs. R. BRUCE WHELTLE & another. [Note 2]

101 Mass. App. Ct. 639
 March 17, 2022 - September 13, 2022

Court Below: Superior Court, Middlesex County
Present: Neyman, Shin, & Hand, JJ.

 

No. 21-P-791.

"Anti-SLAPP" Statute. Constitutional Law, Right to petition government. Practice, Civil, Motion to dismiss. Abuse of Process.

Discussion of the burden-shifting process for evaluating a special motion to dismiss under G. L. c. 231, § 59H, the "anti-SLAPP" statute [645-646], including the nonmoving party's burden to demonstrate, such that the motion judge may conclude with fair assurance, that the claims in the present action were colorable and that the present action was not brought primarily to chill the special movant's legitimate exercise of the right to petition, i.e., that it was not retaliatory [646-648].

In a civil action, the Superior Court judge did not abuse his discretion or make an error of law in allowing the defendants' special motion to dismiss the plaintiffs' abuse of process claim pursuant to G. L. c. 231, § 59H, the "anti-SLAPP" statute, where the judge applied the requisite burden-shifting process for evaluating such a motion sequentially, considered each claim as a whole and holistically in light of the pleadings, affidavits, and record, and considered the conflicting evidence; and where, although a different judge might have reached a different result, there was sufficient objective evidence supporting the judge's conclusion that he lacked fair assurance that the action was not a strategic lawsuit against public participation. [651-658]

Civil action commenced in the Superior Court Department on January 21, 2021.

 A special motion to dismiss was heard by Christopher K. Barry-Smith, J.

Robert E. McLaughlin, Sr. (John G. Hofmann also present) for the plaintiffs.

Jeffrey J. Pyle for the defendants.

 NEYMAN, J. This case involves yet another example of the "ever-increasing complexity of the anti-SLAPP case law," and the "difficult and time consuming" resolution of special motions 

 Page 640 

to dismiss pursuant to the "anti-SLAPP" statute, G. L. c. 231, § 59H. Commonwealth v. Exxon Mobil Corp., 489 Mass. 724, 728 n.5 (2022). Here, we are asked to review a Superior Court judge's application of the augmented anti-SLAPP framework crafted in Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141 (2017) (Blanchard I), and amplified in Blanchard v. Steward Carney Hosp., Inc., 483 Mass. 200 (2019) (Blanchard II). The plaintiffs, Jonathan Nyberg and Sara Dolan (collectively, Nybergs), contend that the judge erred in concluding that the Nybergs' lawsuit for abuse of process and intentional infliction of emotional distress against the defendants, R. Bruce Wheltle and Susan Wheltle (collectively, Wheltles), was a retaliatory strategic lawsuit against public participation (SLAPP suit), and in allowing the Wheltles' special motion to dismiss. Although we have some concerns with the allowance of the special motion to dismiss under the contested facts detailed herein, we cannot say that the judge erred or abused his discretion, see Blanchard I, supra at 160, in allowing the special motion to dismiss where he sedulously followed the augmented framework, made the step-by-step determinations required by Massachusetts precedent, and considered and weighed the requisite Blanchard II, supra at 206-207, factors before rendering his conclusion. Accordingly, we affirm. 

 Background. "We summarize the relevant facts from the pleadings and affidavits that were before the motion judge." 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 164 (2017) (Harrison I). See G. L. c. 231, § 59H (in ruling on special motion to dismiss, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based"). 

 1. The parties. The Nybergs are brother and sister and were engaged in the real estate development business. In 2015, they acquired an undeveloped lot at 88 Coolidge Road in Arlington (Nyberg lot). The Arlington zoning bylaws require that a buildable lot for a single-family home in the Coolidge Road section of Arlington have lot frontage of at least sixty feet and lot size of at least 6,000 square feet. At the time the Nybergs acquired the Nyberg lot, it had exactly sixty feet of frontage on Coolidge Road and the lot size was 6,035 square feet. 

 The Wheltles are husband and wife and have resided at 94 Coolidge Road in Arlington from 1971 to the present. The Wheltle property abuts the Nyberg lot. As discussed below, the Wheltles opposed the proposed development of the Nyberg lot. 

 Page 641 

 2. Initial dispute and Land Court action. The Nybergs intended to construct a single-family house on the Nyberg lot. However, they needed permission from the Arlington conservation commission because the Nyberg lot is located near a wetland. Thus, the Nybergs filed a notice of intent and sought an order of conditions establishing terms to protect the environment. The Wheltles and other neighbors opposed the Nybergs' request for the order of conditions, and according to the Nybergs, "the Wheltles pressed each and every objection to the Nybergs' buildable plans imaginable" throughout the approval process. On September 7, 2017, the Arlington conservation commission approved the Nybergs' application to build a single-family home on the Nyberg lot and issued an order of conditions. [Note 3] 

 On October 27, 2017, the Wheltles filed a complaint in the Land Court, which included a claim for declaratory judgment, an action to quiet title, and a claim for adverse possession of portions of the Nyberg lot. The Land Court complaint alleged, inter alia, that the Wheltles had "acquired title by adverse possession to several disputed slivers of land adjacent to their" property. The Land Court complaint alleged that a brick wall "encroached .52 feet onto the [Nyberg lot]" and that the Wheltles "owned the land under the Brick Wall [by adverse possession,] thereby reducing the Nybergs' frontage to approximately [fifty-nine feet and six inches] and rendering the [Nyberg lot] no longer in compliance with the Arlington zoning building code requirement of a minimum of [sixty] feet of frontage." In addition, the Land Court complaint alleged that a "Boulder Wall encroached [seventy] square feet onto the [Nyberg lot]" and that the Wheltles "owned the land under the Boulder Wall [by adverse possession,] thereby reducing the Nybergs' total square footage to approximately 5,965 square feet and rendering the [Nyberg lot] no longer in compliance with the Arlington zoning building code requirement of a minimum of 6,000 square feet." [Note 4] 

 Following a three-day bench trial, a Land Court judge 

 Page 642 

concluded that the Wheltles had proved adverse possession as to "an area of encroachment of approximately 9.9 square feet," but had "failed to establish rights by adverse possession with respect to the other [claimed] encroachments." Although the Wheltles prevailed in part at trial, the result did not render the Nyberg lot unbuildable as it still contained sixty feet of frontage and more than 6,000 square feet. Judgment in the Land Court action entered on August 5, 2020. Neither party appealed from the Land Court judgment. 

 3. The present action. On January 21, 2021, approximately five and one-half months after judgment entered in the Land Court action, the Nybergs commenced the present action in the Superior Court (present action) against the Wheltles alleging abuse of process and intentional infliction of emotional distress, and seeking damages including the costs of defending the Land Court action, the carrying costs of the Nyberg lot, and the diminution in value of their investment. In their complaint, the Nybergs contended, inter alia, that the Wheltles did not bring the Land Court complaint for the purpose of acquiring seventy square feet of the Nyberg lot. Instead, the Nybergs asserted, the Wheltles used legal process "intentionally and maliciously for the ulterior illegal purpose of preventing the Nybergs from pursuing their legitimate right to build a single-family house on the property they had acquired," because the Nybergs' proposed development would "depriv[e] the Wheltles of the view of the undeveloped lot and natural vegetation existing thereon and the privacy afforded to them by the undeveloped lot along the northern border of their property." 

 The Nybergs alleged that evidence of the Wheltles' ulterior purpose included the following: on December 6, 2017, at the conclusion of a Department of Environmental Protection site visit to the Nyberg lot, counsel for the Wheltles asked Jonathan Nyberg if he and his sister would be willing to sell their lot to her clients. The Wheltles' offer was much less than what the Nybergs had paid for the Nyberg lot, and thus the parties did not reach agreement. During this conversation, counsel for the Wheltles purportedly stated to Jonathan Nyberg, "My clients are prepared to go straight out on their adverse possession case in order to block the project." 

 Page 643 

 The Nybergs further averred that the Wheltles "aggressively prosecuted" their adverse possession claims in the Land Court, "requiring the Nybergs to mount a rigorous and expensive defense." The Nybergs also alleged that "[t]he Wheltles knew or should have known they had no legal basis to claim title by adverse possession to" certain portions of the Nyberg lot. Finally, the Nybergs alleged that the Wheltles' acts, which were intended to render the Nyberg lot unbuildable, constituted "conduct that was extreme and outrageous" and caused "extreme emotional distress." 

 4. The special motion to dismiss. In response to the Nyberg complaint, the Wheltles filed an answer and a special motion to dismiss under the anti-SLAPP statute, G. L. c. 231, § 59H. Through their motion, affidavits, and pleadings, the Wheltles argued that the present action was based solely on the Wheltles' legitimate, and partially successful, petitioning activity. They maintained that they opposed the Nybergs' proposed development and brought the Land Court action because they believed that the development "would harm wetlands and natural resources, and . . . would place a new boundary wall reaching [ten] feet in height right against [their] property, in place of [their] existing retaining wall." The Wheltles and other residents attended the Arlington conservation commission hearings and spoke out against the Nybergs' proposed project, exercising their legal rights as abutters. R. Bruce Wheltle further averred that he and his wife spent a considerable sum of money to litigate the Land Court claims through trial, and that they "became economically unable to appeal from the adverse portions of the [Land Court judgment] or to maintain [their] appeal from the Arlington Conservation Commission's Bylaw decision." At the time they filed the special motion to dismiss, the Wheltles were seventy-nine and seventy-seven years old and retired. They claimed that during the Land Court proceedings, counsel for the Nybergs told counsel for the Wheltles that if the Nybergs prevailed in the Land Court action, they would bring an abuse of process claim against the Wheltles. The Wheltles argued that the Nybergs had considerable means, that they operated a substantial real estate development business through which they had completed numerous real estate transactions in Arlington since 2013, and that in the two years prior to the filing of the present action, "[Jonathan] Nyberg was a realtor on transactions in the total amount of $46,194,000." The Wheltles ultimately contended that the present action is retaliatory, 

 Page 644 

and a classic or typical SLAPP suit brought to chill or punish their legitimate petitioning activity, and that having to respond to it has caused them anxiety and distress. 

 Unsurprisingly, the Nybergs' response to the special motion to dismiss painted a different picture. Through their supporting affidavits and pleadings, including the allegations in their Superior Court complaint, the Nybergs contended that the Wheltles' Land Court action was predicated on illegitimate and ulterior motives, and caused the Nybergs financial damages exceeding $460,000 in the form of attorney's fees, expert fees, other litigation costs and expenses, taxes, and interest. The Nybergs further responded that the Wheltles presented inflated, exaggerated, or inaccurate allegations regarding the Nybergs' real estate business and income. The Nybergs insisted that they were not wealthy and powerful property developers, but brother and sister who lived locally in Arlington and operated a small local company with no office and no other employees. As of May of 2021, the Nybergs owned eight rental properties along with the vacant land at 88 Coolidge Road. The Nybergs averred that Sara Dolan was a homemaker, not a high-end real estate developer. They also averred that the Wheltles were not so-called victims of a typical or classic SLAPP suit, but rather people of substantial means as evidenced by their "free and clear" ownership of the property at 94 Coolidge Road and another residential property at 100 Coolidge Road in Arlington, which had a combined market value of more than $2 million. The Nybergs emphasized that in the Land Court action the Wheltles established adverse possession solely as to a sliver of land located underneath a concrete block wall, and that the result of the Land Court action was that the Nybergs could proceed with their plan to build a single-family house on their lot. Thus, the Nybergs argued, the Wheltles' adverse possession claims were unsuccessful when viewed in context of what the parties sought to achieve. According to the Nybergs, "it was the Wheltles who played the role of bully in these circumstances." The Nybergs argued that far from being a SLAPP suit, the Superior Court action they brought was to recoup the money spent defending the Wheltles' improper and pretextual Land Court claim, and not to retaliate against the Wheltles' petitioning activity. 

 Following a hearing, a Superior Court judge allowed the Wheltles' special motion to dismiss. In a comprehensive memorandum and order, the judge applied the augmented framework 

 Page 645 

delineated in Blanchard I, 477 Mass. at 159-161, and the nonexclusive factors enumerated in Blanchard II, 483 Mass. at 206-207. "In weighing th[o]se factors and all the facts surrounding the Nybergs' lawsuit in [his] discretion," the judge concluded that he was "not fairly assured that the Nybergs' suit is not a SLAPP suit brought to punish the Wheltles for the Land Court [a]ction," and further concluded that he was "fairly assured that the Nybergs' suit is retaliatory, in response to the Wheltles' partially successful Land Court [a]ction." Accordingly, the judge allowed the Wheltles' special motion to dismiss. The Nybergs appeal therefrom. 

 Discussion. 1. Legal standards. a. Overview of the augmented framework. General Laws c. 231, § 59H, provides a procedural remedy -- the special motion to dismiss -- for early dismissal of SLAPP suits, i.e., "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Blanchard I, 477 Mass. at 147, quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161 (1998) (Duracraft). See Duracraft, supra, quoting Wilcox v. Superior Court, 27 Cal. App. 4th 809, 816-817 (1994) ("SLAPP suits have been characterized as 'generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so'"). The Supreme Judicial Court has delineated the following burden-shifting process for evaluating a special motion to dismiss under the anti-SLAPP statute:

"Under G. L. c. 231, § 59H, a party may file a special motion to dismiss if 'the civil claims . . .' against it are based solely on its exercise of the constitutional right to petition. The burden-shifting framework devised in Duracraft, 427 Mass. 156, and augmented in Blanchard I, 477 Mass. at 159-161, is used to evaluate such motions. At the threshold stage, the moving party (here, the [Wheltles]) must demonstrate, through pleadings and affidavits, that each claim it challenges is based solely on its own protected petitioning activity, and that the claim has no other substantial basis. . . . If the moving party meets its burden, the burden shifts at the second stage to the nonmoving party (here, the [Nybergs]), to demonstrate that the anti-SLAPP statute nonetheless does not require dismissal.

"A nonmoving party may satisfy its burden at the second stage in one of two ways. See Blanchard I, 477 Mass. at 

 Page 646 

159-160. The first path, which tracks the statutory language, requires the nonmoving party (here, the [Nybergs]) to establish 'by a preponderance of the evidence that the [moving party, here the (Wheltles)] lacked any reasonable factual support or any arguable basis in law for its petitioning activity,' Baker v. Parsons, 434 Mass. 543, 553-554 (2001), and that the moving party's acts caused 'actual injury to the responding party,' G. L. c. 231, § 59H. The second path, laid out in Blanchard I, requires the nonmoving party (here, the [Nybergs]) to establish, such that the motion judge can conclude with fair assurance, that its claim is not a 'meritless' SLAPP suit 'brought primarily to chill the special movant's [here, the (Wheltles')] legitimate petitioning activities.' Blanchard I, supra." 

477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 518-519 (2019) (Harrison II). 

 A judge must apply the augmented framework sequentially. See Harrison II, 483 Mass. at 519. "Beginning at the threshold stage, the motion judge 'consider[s] the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based,' and evaluates whether the party that has the burden of proof has satisfied it." Id., quoting G. L. c. 231, § 59H. "Sequential application of the framework is especially significant for purposes of the . . . augmented second stage of the framework." [Note 5] Harrison II, supra. "We review the judge's ruling for an abuse of discretion or error of law." Blanchard II, 483 Mass. at 203. 

 Before proceeding to our discussion of the judge's application of each stage, we review in more detail the requirements of the second path of the second stage of the augmented framework. 

 b. Second path of the second stage. Under the second path of the second stage of the augmented framework the nonmoving party (here, the Nybergs) bore the burden to demonstrate, "such that the motion judge may conclude with fair assurance," two elements: (1) that the claims in the present action were "colorable"; and (2) that the present action "was not brought primarily 

 Page 647 

to chill the special movant's [(here, the Wheltles')] legitimate exercise of [their] right to petition, i.e., that it was not retaliatory" (citations and quotation omitted). [Note 6] Blanchard II, 483 Mass. at 204. 

 The present case hinges on the second element of the second path of the second stage. Under the second element of the second path analysis, a judge must "assess the 'totality of the circumstances pertinent to the nonmoving party's asserted primary purpose in bringing its claim,' and . . . determine whether the nonmoving party's claim constitutes a SLAPP suit." Blanchard II, 483 Mass. at 205, quoting Blanchard I, 477 Mass. at 160. The judge must be "fair[ly] assur[ed]" in this conclusion, which "requires the judge to be confident, i.e., sure, that the challenged claim is not a 'SLAPP' suit." Blanchard II, supra. "If the judge determines that the nonmoving party's [(the Nybergs')] claim 'was not primarily brought to chill the special movant's [(the Wheltles')] legitimate petitioning activities,' but instead was brought to seek redress for harm caused by the moving party's [(the Wheltles')] conduct, then the anti-SLAPP motion to dismiss the nonmoving party's [(the Nybergs')] claim properly is denied." Id. at 206, quoting Blanchard I, supra. See Blanchard I, supra at 159, citing Duracraft, 427 Mass. at 161, quoting 1994 House Doc. No. 1520 ("A nonmoving party's claim is not subject to dismissal as one 'based on' a special movant's petitioning activity if, when the burden shifts to it, the nonmoving party can establish that its suit was not 'brought primarily to chill' the special movant's legitimate exercise of its right to petition").

 Conversely, if the judge concludes that the nonmoving party's claim is a retaliatory SLAPP suit, or if the judge is unsure whether the claim is or is not a SLAPP suit, the nonmoving party has failed to meet its burden and the special motion to dismiss should be allowed. See Blanchard II, 483 Mass. at 205 (fair assurance standard "requires the judge to be confident, i.e., sure, that the challenged claim is not a 'SLAPP' suit"). [Note 7] 

 Page 648 

 When analyzing whether a suit is retaliatory, the judge must evaluate the nonmoving party's "'asserted primary purpose in bringing [its] claim,' Blanchard I, 477 Mass. at 160, in light of the objective facts presented and any reasonable inferences that may be drawn from them." Blanchard II, 483 Mass. at 209-210. "If the judge, considering each claim as a whole, and holistically in light of the litigation, is fairly assured that each challenged claim does not give rise to a SLAPP suit, then the special motion to dismiss . . . properly is denied" (quotation and citation omitted). Id. at 210. In making this determination, the judge may consider the following nonexclusive factors (Blanchard II factors): (1) whether the case is a "classic" or "typical" SLAPP case, i.e., "a lawsuit[] directed at individual citizens of modest means for speaking publicly against development projects"; (2) whether the suit was commenced shortly after the petitioning activity; (3) whether the special motion to dismiss was "filed promptly"; (4) "the centrality of the challenged claim . . . [to] the litigation as a whole, and the relative strength of the nonmoving party's claim"; (5) evidence that the moving party's petitioning activity was in fact chilled; and (6) "whether the damages requested by the nonmoving party, such as attorney's fees associated with an abuse of process claim, themselves burden the moving party's exercise of the right to petition" (citation omitted). Blanchard II, supra at 206-207. It is left to the judge "to consider and weigh these and other factors as appropriate, in light of the evidence and the record as a whole." Id. at 207. In doing so, the judge has discretion in determining whether he or she is fairly assured that the challenged claim is not a SLAPP suit. See id. at 203, 205, 207. See also L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (abuse of discretion occurs where judge makes clear error of judgment "such that the decision falls outside the range of reasonable alternatives"). [Note 8] 

 Page 649 

 2. The judge's application of the augmented framework. Although the present case centers on the second element of the second path of the second stage of the augmented framework, Massachusetts case law mandates the application of the entire framework, sequentially, to each challenged claim. See Harrison II, 483 Mass. at 519; note 5, supra. Accordingly, we review the judge's application and determinations. 

 The judge followed the augmented framework sequentially. He first considered the "threshold stage" and determined that the Wheltles, as the moving party, met their burden of showing that the Nybergs' claims for abuse of process and intentional infliction of emotional distress were based solely on the Wheltles' petitioning activity in the Land Court action, and had no other substantial basis. See Harrison II, 483 Mass. at 519. The Nybergs do not challenge that determination on appeal.

 Next, the judge considered whether the Nybergs had met their burden under the first path of the second stage of the augmented framework to establish that the Wheltles' claims in the Land Court action were "devoid of any reasonable factual support or any arguable basis in law." G. L. c. 231, § 59H. The judge concluded that in view of the Wheltles' partial success in the Land Court action, which the Nybergs did not appeal, the Nybergs had failed to meet the "very high bar" of showing that the Land Court action was devoid of any reasonable factual support or legal basis. See Blanchard I, 477 Mass. at 156 n.20. Again, the Nybergs do not challenge that determination on appeal.

 The judge then moved to the first element of the second path of the second stage of the augmented framework and considered whether the Nybergs had demonstrated that the claims in the present action were colorable. Regarding the Nybergs' abuse of process claim, [Note 9] the judge determined that the Nybergs marshaled sufficient evidence to state a colorable claim that the Wheltles' Land Court action was an abuse of process because it was 

 Page 650 

purportedly brought for an ulterior or illegitimate purpose. [Note 10] See Harrison II, 483 Mass. at 527-528. The Wheltles concede on appeal that the colorability determination was within the judge's discretion. 

 As to the intentional infliction of emotional distress count, the judge found that the Nybergs did not address the issue of colorability, and thus allowed the special motion to dismiss that claim. The Nybergs do not contest the judge's dismissal of the emotional distress claim on appeal.

 Finally, the judge considered the pivotal issue in the present appeal: whether the Nybergs had met their burden under the second element of the second path of the second stage of the augmented framework to demonstrate that the present action was not brought primarily to chill the Wheltles' legitimate petitioning activity -- "i.e., that it was not retaliatory." Blanchard II, 483 Mass. at 204. The judge analyzed and applied each of the nonexclusive Blanchard II factors. He found that the first factor "mildly favors a determination" that the present action has characteristics of a typical SLAPP suit because, although the parties dispute each other's net worth, "the Nybergs are experienced and successful real estate professionals while the Wheltles are retired, septuagenarian homeowners who forewent certain lawful means of challenging the development . . . due to the expense." As to the second factor, the judge noted that the Nybergs brought the present action five and one-half months after judgment entered in the Land Court action, and that such "close temporal proximity weigh[]s in favor of a conclusion that the present matter was filed in retaliation for the Land Court [a]ction." As to the third factor, the judge noted that the Wheltles filed their special motion to dismiss approximately one and one-half months after being 

 Page 651 

served with the complaint in the present action, and found that this factor weighs in favor of a conclusion ("albeit less strongly than other factors") "that the present matter is retaliatory." As to the fourth factor -- the strength of the litigation as a whole and the strength of the nonmoving party's claim -- the judge noted that the abuse of process action "is not weak," but the intentional infliction of emotional distress claim "is meritless," and the present action is based solely on the Land Court action and thus on the Wheltles' petitioning activity. Accordingly, the judge concluded that the fourth factor supports a conclusion of retaliation. The judge found that the fifth factor, evidence that the moving party's petitioning activity was in fact chilled, did not apply because the Land Court action had terminated and was not appealed. The judge determined that the sixth factor -- whether the damages requested by the Nybergs burdened the Wheltles' exercise of their legitimate petitioning rights -- did not facially apply because the Land Court action had terminated before the commencement of the present action. Nonetheless, the judge found that the factor "minimally" weighed in favor of a finding of retaliation in view of the Wheltles' averment that they abandoned lawful avenues for challenging the development of the Nyberg lot due to the cost of such measures, "which suggests that potential future lawful petitioning activities . . . may be hampered." 

 In addition to analyzing each factor, the judge was cognizant of his obligation to "assess the totality of the circumstances pertinent to the [Nybergs'] asserted primary purpose in bringing [their] claim," Blanchard I, 477 Mass. at 160, and consider "each claim as a whole, and holistically in light of the litigation," Blanchard II, 483 Mass. at 210. After "weighing [the] factors and all the facts and circumstances surrounding the [present action]," the judge, in his discretion, concluded that he was "not fairly assured that the [present action] is not a SLAPP suit brought to punish the Wheltles for the Land Court [a]ction," and was "fairly assured that the [present action] is retaliatory, in response to the Wheltles' partially successful Land Court [a]ction." Having determined that the Nybergs failed to meet their burden under the second element of the second path of the second stage of the augmented framework, the judge allowed the Wheltles' special motion to dismiss the abuse of process claim. 

 3. Analysis. The record shows that the judge followed the augmented framework sequentially, assiduously, and judiciously. His written decision reflects a comprehensive assessment of the 

 Page 652 

totality of the circumstances and thoughtful consideration of "each claim as a whole, [examined] holistically in light of the litigation" as mandated by the augmented framework. Blanchard II, 483 Mass. at 210. Consequently, it is difficult to conclude that the judge abused his discretion. 

 The Nybergs disagree. They primarily argue that the present action could not have been retaliatory because it was filed more than five months after the Wheltles' petitioning activity in the Land Court had concluded and neither party had appealed from that judgment. Thus, the Nybergs contend, the present action cannot be deemed a SLAPP suit, brought primarily to chill the Wheltles' legitimate exercise of their right to petition, because there was no ongoing petitioning activity to influence, burden, or chill. This argument is unavailing. As the judge ruled, "ongoing petitioning activity is not required for the nonmoving party's suit to be retaliatory; it is enough if the suit seeks to punish the moving party for prior petitioning activity." Our case law supports the judge's conclusion. See Wenger v. Aceto, 451 Mass. 1, 7 n.6 (2008), quoting Fisher v. Lint, 69 Mass. App. Ct. 360, 363 (2007) ("the purpose of filing a SLAPP suit is not to prevail in the matter, but rather to use litigation to chill, intimidate, or punish citizens who have exercised their constitutional right to petition the government to redress a grievance" [emphasis added]). A lawsuit brought to "punish" petitioning activity may constitute as much of a SLAPP suit as a lawsuit brought to deter or chill ongoing petitioning activity. See Duracraft, 427 Mass. at 161 (SLAPP suits are "generally meritless suits brought . . . to deter common citizens from exercising their political or legal rights or to punish them for doing so" [citation omitted]). Further, as the judge recognized, punishing past petitioning may serve to burden, if not deter or chill, future petitioning activity. [Note 11] 

 At oral argument, the Nybergs acknowledged that the above cited language from Wenger, Duracraft, and Lint survives the 

 Page 653 

Blanchard II and Harrison II changes to the anti-SLAPP analysis, and thus that an action brought to "punish" legitimate petitioning activity may still constitute a SLAPP suit. However, they argue that it is neither retaliatory nor punishment to attempt to recover nearly $500,000 for abuse of process when they were wronged by "the Wheltles' illegitimate adverse possession claims." Specifically, the Nybergs contend as follows: (1) the Land Court action was, as the Land Court judge wrote, "a pitched legal battle over literally every square inch of the disputed property, with the prize being the buildability or non-buildability" of the Nyberg lot; (2) viewed in that context, the Wheltles did not prevail by gaining less than ten square feet of "insignificant" land located under a concrete wall, but, in substance, lost the case as the result did not render the Nyberg lot unbuildable; and (3) in such circumstances, the Nybergs' primary motivation underlying the present action could not have been to punish the Wheltles' legitimate petitioning activity, but instead was to recover damages for the financial loss caused by the Wheltles' illegitimate and pretextual adverse possession claims. 

 There is a measure of persuasiveness in the Nybergs' argument. The Wheltles brought the Land Court action, at least in part, to prevent the development of the Nyberg lot. Although the Wheltles prevailed on a portion of their Land Court action, they succeeded only in recovering a sliver of land, plus they failed to render the Nyberg lot unbuildable. Furthermore, the judge determined that the Nybergs' abuse of process claim was colorable. See Harrison II, 483 Mass. at 527, quoting Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 408 (2002) ("[A]n abuse of process counterclaim may be brought even where the plaintiff has a meritorious claim. It is, indeed, 'immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them'"). In addition, while the Wheltles' motion, pleadings, and affidavits painted them as aging retirees of modest means and the Nybergs as powerful property developers, the Nybergs' pleadings and opposing affidavits disputed those portraits. The Nybergs averred that they were the sole employees of a small family business, while the Wheltles were people of substantial means, as illustrated by their ownership of two considerable properties. The Nybergs presented 

 Page 654 

averments and evidence that the Wheltles coveted the Nyberg lot and acted as the "bully" here. 

 In view of the factual disputes at this early stage of the proceedings, the Nybergs argue that this case requires a jury resolution. Consistent with this argument, the Supreme Judicial Court has advised courts to analyze special motions to dismiss with caution in view of the obvious and considerable consequences stemming from the allowance of such a motion. See Harrison II, 483 Mass. at 529-530 ("We caution against the weaponization of the anti-SLAPP statute. . . . [I]t is not properly used either as cudgel to bludgeon an opponent's resolve to exercise its petitioning rights, or as a shield to protect claims that, although colorable, were brought primarily to chill another party's legitimate petitioning activity"). See also Exxon Mobil Corp., 489 Mass. at 728 ("Filing a special motion has an immediate and important effect on the litigation, short-circuiting and rerouting the ordinary trial and appellate process"). But see Blanchard I, 477 Mass. at 147, quoting Duracraft, 427 Mass. at 161 ("anti-SLAPP statute provides a 'procedural remedy for early dismissal of the disfavored' lawsuits" -- i.e., those targeting legitimate petitioning activity). The Nybergs further maintain that in seeking damages they did what every plaintiff-in-tort does when pursuing a tortfeasor, and that such activity was precisely what the Supreme Judicial Court recognized and endorsed as not being a SLAPP suit in Blanchard I, supra at 160. 

 The Nybergs' arguments demonstrate some of the difficulties associated with the application of the augmented framework. On one hand, the present action presents as a typical SLAPP case in that a supposedly wealthy developer sued abutters of supposedly modest means for petitioning in court to challenge a development project. See Blanchard II, 483 Mass. at 206. On the other hand, the Nybergs averred that far from being wealthy and powerful developers, they were a real estate broker and part-time bookkeeper attempting to develop a single-family residential property, while the Wheltles were not the "individual citizens of modest means" contemplated by the anti-SLAPP law. Id. The parties contested each other's motivations and representations. There is an inherent difficulty and, in some cases, prematurity in requiring a judge to make credibility determinations and discern a party's primary motivation predicated on affidavits, pleadings, and proffers, 

 Page 655 

and not on a more complete evidentiary record [Note 12] scrutinized through cross-examination. [Note 13] Indeed, there is a notable tension between the standard of review, which requires the judge, in his or her discretion, [Note 14] to be "fairly assured" that the challenged claim is not a SLAPP suit before denying a special motion to dismiss, and the Supreme Judicial Court's apparent restraint on that discretion in its admonition to proceed with caution before allowing the special motion to dismiss. [Note 15] See Harrison II, 483 Mass. at 529-530. 

 Nonetheless, under the standards enumerated in Blanchard II and Harrison II, we cannot say that the judge abused his discretion or made an error of law. As discussed, the judge applied the augmented framework sequentially, [Note 16] considered "each claim as a 

 Page 656 

whole, and holistically . . . in light of the pleadings, affidavits, and the record as a whole," and "considered the conflicting evidence." Blanchard II, 483 Mass. at 210. The judge concluded that he was "not fairly assured that the Nybergs' suit is not a SLAPP suit." Although a different judge may have reached a different result, there was sufficient objective evidence supporting the judge's conclusion that he lacked "fair assurance" -- i.e., that he was not "confident" or "sure" -- that the action was not a SLAPP suit. [Note 17] Id. at 205. As his determination did not constitute clear error that fell outside the range of reasonable alternatives, we discern no abuse of discretion in the allowance of the special motion to dismiss. See L.L., 470 Mass. at 185 n.27. 

 The Nybergs also argue that the import of the judge's decision is to render any abuse of process claim obsolete. We disagree. Although application of the special motion to dismiss may, in certain circumstances, create challenges to sustaining an abuse of process claim, application of the augmented framework has not abrogated the common-law tort of abuse of process. To the contrary, the Supreme Judicial Court has addressed and, in effect, rejected this argument. See Harrison I, 477 Mass. at 169, 174-175 & n.14. 

 Of final note, the Supreme Judicial Court recently expressed the following concern with the anti-SLAPP statute and case law:

"Although originally drafted with a particular purpose in mind -- that is, the prevention of lawsuits used by developers to punish and dissuade those objecting to their projects in the permitting process -- the anti-SLAPP statute's broadly drafted provisions, particularly its wide-ranging definition of 

 Page 657 

petitioning activity, have led to a significant expansion of its application. The ever-increasing complexity of the anti-SLAPP case law has also made resolution of these cases difficult and time consuming. We recognize that this case law may require further reconsideration and simplification to ensure that the statutory purposes of the anti-SLAPP statute are accomplished and the orderly resolution of these cases is not disrupted." (Citations omitted.)

Exxon Mobil Corp., 489 Mass. at 728 n.5. Consistent with this observation, the instant case raises various concerns. Inasmuch as the present action involves a developer-abutter dispute and abuse of process claim -- traditional indicia of SLAPP matters -- and insofar as the judge sequentially and properly applied the augmented framework, the judge did not abuse his discretion in concluding that he was not fairly assured that the present action is not a SLAPP suit. Yet, the judge made this determination on a record in which several nonexclusive Blanchard II factors were at best marginally applicable. See note 16, supra. Furthermore, we have difficulty reconciling the admonition that a judge should be cautious in ending a party's petitioning activity at the early stage of a litigation with a standard that places the burden of proof on the nonmoving party, requires the judge to be fairly assured that the burden is met, and leaves this determination to judicial "discretion" after considering each claim "holistically in light of the litigation." Blanchard II, 483 Mass. at 203-205, 207, 210. In other contexts, dismissing a case at an early stage of the litigation requires a far more exacting burden on the moving party and, typically, requires that we view allegations or evidence in the light most favorable to the nonmoving party. See, e.g., Dunn v. Genzyme Corp., 486 Mass. 713, 717 (2021) (in context of motion to dismiss, court must accept facts asserted in complaint as true and draw all reasonable inferences in plaintiff's favor); Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018) (summary judgment standard is "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law" [citation omitted]). See note 14, supra. Indeed, the fair assurance standard seemingly reverses the usual rule in that doubts about the viability of a claim are typically resolved by allowing it to be developed through the next stage of proceedings, not by dismissing it. We further note the concern regarding a 

 Page 658 

process that authorizes the dismissal of claims on the basis of competing affidavits, disputed facts, and "holistic[]" consideration of the claims, particularly in cases, like the present one, that require resolution of the parties' motivations. Blanchard II, supra at 210. In this regard, as we have noted, the Nybergs insist that the present action cries out for a jury trial as the only appropriate way to resolve critical credibility disputes and determine the parties' true motivations. This argument has some force in that there are obvious difficulties in applying the latter stages of the augmented framework and requiring judges to be fairly assured that the challenged claim is not a SLAPP suit, id. at 205, absent full discovery and testimony tested through cross-examination. Yet, the special motion to dismiss remedy exists, in large part, to avoid costly litigation and trial. See, e.g., Blanchard I, 477 Mass. at 147; Duracraft, 427 Mass. at 161. In any event, it is for the Supreme Judicial Court or the Legislature to address and resolve these concerns should they so choose.

 For the aforementioned reasons, we conclude that there was no abuse of discretion or error of law in the allowance of the special motion to dismiss, and affirm the judgment. [Note 18]

 So ordered.

FOOTNOTES
[Note 1] Sara Dolan. 

[Note 2] Susan Wheltle. 

[Note 3] Bruce Wheltle and two additional neighbors filed suit in the Superior Court challenging the order of conditions under Arlington's wetlands protection bylaw and regulations. Separately, neighbors -- not including the Wheltles -- appealed from the Arlington conservation commission approval to the Department of Environmental Protection. Neither of those matters is before us. 

[Note 4] In response to the Wheltles' Land Court complaint, the Nybergs filed a special motion to dismiss pursuant to G. L. c. 231, § 59H. A Land Court judge, who was also the trial judge in that matter, denied the motion in a written memorandum and order. The correctness of the judgment in the Land Court action and the resolution of the special motion to dismiss in that matter are not before us on appeal. 

[Note 5] The Supreme Judicial Court has explained that in applying the augmented framework sequentially, "by the time the motion judge reaches the last step, he or she will be in a more informed position to make an assessment of the 'totality of the circumstances pertinent to the nonmoving party's asserted primary purpose in bringing its claim,' as the augmented framework requires." Harrison II, 483 Mass. at 519, quoting Blanchard I, 477 Mass. at 160. 

[Note 6] We note the sometimes interchangeable terminology used at this stage, including a showing that the suit was "not a 'SLAPP' suit," was "not brought primarily to chill," or was "not retaliatory." Blanchard II, 483 Mass. at 204-205. 

[Note 7] In Blanchard II, 483 Mass. at 205-207, the Supreme Judicial Court explained the application of the fair assurance standard to the special motion to dismiss augmented framework. The court also noted that the "fair assurance standard typically has been applied in the context of criminal proceedings to evaluate whether a preserved error is nonprejudicial." Id. at 205. See generally Commonwealth v. Reed, 397 Mass. 440, 443 & n.4 (1986) (fair assurance standard not met where "the error possibly weakened [the defendant's] case in some significant way" and court is left with "grave doubt" [citations omitted]); Commonwealth v. Rodriguez, 92 Mass. App. Ct. 774, 781-782 (2018) (no fair assurance where "evidence . . . was not overwhelming"); Commonwealth v. Cruz, 53 Mass. App. Ct. 393, 405 & n.14 (2001) (no fair assurance where court is "left with grave doubt"). 

[Note 8] Massachusetts appellate courts have not explicitly stated whether the "discretion" afforded to a judge in deciding a special motion to dismiss is the same as the discretion defined in L.L., 470 Mass. at 185 n.27. The parties do not dispute that the standard enumerated in L.L. should apply, and thus we do not reach that issue. 

[Note 9] An abuse of process claim has three elements: "(1) process was used, (2) for an ulterior or illegitimate purpose, (3) resulting in damage" (quotations omitted). Harrison II, 483 Mass. at 526-527, quoting Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010). 

[Note 10] The judge found that the Nybergs' affidavits and pleadings alleged "sufficient evidence" of an ulterior or illegitimate purpose underlying the Land Court action, including the following: (1) the Wheltles had previously reached out to the prior owner of the abutting lot (at least a portion of which became the Nyberg lot) three times in an attempt to acquire some or all of that land; (2) the Land Court action sought adverse possession of only a small portion of the Nyberg lot, and had the Wheltles prevailed in full they would have gained title to an insignificant amount of "largely useless" square footage; and (3) the Wheltles' attorney told the Nybergs that her "clients are prepared to go straight out on their adverse possession case in order to block the [Nybergs'] project." As the judge noted, the information alleged by the Nybergs in their pleadings and affidavits was not necessarily sufficient to prove an abuse of process claim, but was sufficient, at this stage of the proceedings, to state a colorable abuse of process claim. 

[Note 11] The judge concluded that the Wheltles' averments "suggest[] that potential future petitioning activities . . . may be hampered." The Nybergs assert that "[t]he combination of these words -- 'suggests,' 'potential,' 'future' and 'may' -- injects far more speculation and ambiguity than permissible to be able to support a conclusion that the Nybergs 'intended' to prevent some unknown future petitioning by the Wheltles." As discussed below, where the Nybergs bore the burden to prove that the challenged claim is not a SLAPP suit, such that the judge is "fairly assured" and "sure" that it is not, we cannot say that the judge erred or abused his discretion. 

[Note 12] The parties appended various pleadings and documents to their affidavits in support of or opposition to the special motion to dismiss, many of which stemmed from the Land Court action. 

[Note 13] General Laws c. 231, § 59H, provides that "discovery proceedings shall be stayed upon the filing of the special motion . . . ; provided, however, that the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted." It does not appear that the parties sought additional discovery before the filing or resolution of the special motion to dismiss. The Supreme Judicial Court has cautioned that "[b]ecause discovery at this stage generally is inconsistent with the expedited procedural protections established by the anti-SLAPP statute, judges should be parsimonious in permitting it" apart from "exceptional cases" such as "to test the veracity of factual allegations" (citation omitted). Blanchard II, 483 Mass. at 212. That notwithstanding, the parties did supplement the special motion to dismiss with myriad exhibits and documents from the Land Court action. See note 12, supra. 

[Note 14] At oral argument, the Nybergs suggested that rather than leave the determination of a special motion to dismiss to a judge's discretion at this early stage of the proceedings, the summary judgment standard -- i.e., viewing the evidence in the light most favorable to the nonmoving party -- would be a more fair and appropriate standard of review. Although that standard might provide greater consistency to the analysis of G. L. c. 231, § 59H, motions (but result in more denials of such motions), we are bound by the standard set forth by the Supreme Judicial Court. 

[Note 15] We note the difficulty in defining the nature of the "discretion" that a judge has under a burden-shifting scheme that places the burden of proof on the nonmoving party and requires the judge to be "fairly assured" that the burden has been met. Blanchard II, 483 Mass. at 203, 207. 

[Note 16] We note that the judge determined that several of the six nonexclusive Blanchard II factors considered at the second element of the second path of the second stage of the augmented framework were either marginally relevant or facially inapplicable in this case. For example, as discussed above, there was a factual dispute as to the applicability of the first factor that the judge chose to resolve at this early stage. Also, the judge found that the fifth factor -- evidence that the moving party's activity was in fact chilled -- did not apply because the Land Court action had already terminated. Likewise, the judge found that the sixth factor -- whether the damages requested by the Nybergs burdened the Wheltles' petitioning rights -- was not facially applicable. Finally, although the judge found that the second factor applied because the present action was commenced in "relatively close temporal proximity" to the Land Court action, any abuse of process claim or counterclaim is likely to be filed within a "relatively close temporal proximity" to the process being challenged. Moreover, there may be myriad and diverse strategic or other reasons that delay the bringing of a legal action or claim. 

[Note 17] Here, the judge further concluded that he was "fairly assured that the Nybergs' suit is retaliatory." We do not read the augmented framework to mandate such a determination. Rather, anything short of fair assurance that the action was not a SLAPP suit left the Nybergs' burden unmet and required the judge to allow the special motion. See Blanchard II, 483 Mass. at 205. 

[Note 18] The Wheltles' request for appellate attorney's fees and costs pursuant to G. L. c. 231, § 59H, is allowed. See Benoit v. Frederickson, 454 Mass. 148, 154 (2009). In accordance with the procedure set out in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), the Wheltles may, within fourteen days of the issuance of this opinion, submit an application for attorney's fees and costs with the appropriate supporting materials. The Nybergs shall have fourteen days thereafter to file a response to that application. The Wheltles' request for double attorney's fees and costs pursuant to Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019), is denied. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.