NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-4                                            Appeals Court

    STEVEN L. BERK & another[1]  vs.  KENNETH KRONLUND & another.[2]

                          No. 22-P-4.

       Worcester.     October 14, 2022. - June 14, 2023.

            Present:  Wolohojian, Blake, & Desmond, JJ.


Narcotic Drugs.  Negligence, Doctor.  Board of Registration in
     Medicine.  Medical Malpractice, Immunity.  "Anti-SLAPP"
     Statute.  Practice, Civil, Motion to dismiss, Summary
     judgment, Attorney's fees.


     Civil action commenced in the Superior Court Department on
June 30, 2017.

     A special motion to dismiss was heard by Janet Kenton-
Walker, J., and the remaining issue was heard by her on a motion
for summary judgment.


     Bart Heemskerk for the plaintiffs.
     Thomas Bright for the defendants.

_____

          [1] Steven L. Berk, M.D., P.C.

          [2] Reliant Medical Group, Inc.

DESMOND, J.  This case arises from a dispute between the plaintiff and defendant, both of whom are physicians.[3]  The defendant referred the plaintiff, his patient at the time, to Physician Health Services, Inc. (PHS),[4] after becoming concerned about the plaintiff's ability to practice medicine in light of his opioid dependence.  The plaintiff subsequently filed a complaint in the Superior Court against the defendant, asserting negligence; interference with advantageous business relations; violation of the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H, 11I; and invasion of privacy.  The latter three claims were disposed of when the judge allowed the defendant's special motion to dismiss under the "anti-SLAPP" statute, G. L. c. 231, § 59H.  Summary judgment subsequently entered on the negligence claim on the ground that the defendant's actions were protected by the limited immunity under G. L. c. 112, § 5G (a), to those making reports to peer review committees, and because the undisputed material facts showed that the defendant was entitled to judgment as a matter of law.  The plaintiff appeals, arguing

---

[3] The extent to which there exists any claim against the corporate defendant is unclear.  For the sake of clarity, we use "plaintiff" and "defendant" to describe the individual parties alongside their respective corporate coparties.

[4] PHS, as discussed in greater detail infra, is a nonprofit corporation founded by the Massachusetts Medical Society to address physician health.

that the judge erred in allowing the special motion to dismiss and the motion for summary judgment.  We affirm.

Background.  The plaintiff and defendant are both board certified, licensed physicians in Massachusetts.[5]  The plaintiff, an ophthalmologist then employed by the University of Massachusetts Memorial Medical Center, established the defendant as his primary care physician in December 2012.  The plaintiff had a long medical history of migraine headaches and had previously been prescribed Percocet, in addition to other medications, to treat this condition.  The defendant referred the plaintiff to a neurologist to treat his headaches.  The neurologist was concerned about the plaintiff's use of Percocet, and, on the neurologist's recommendation, the defendant formulated a plan to taper the plaintiff's use of opioids by ten percent each month.

The plaintiff was initially compliant with this plan and nearly ceased the use of opioids, but, on May 30, 2014, injured his back and reported severe pain and difficulty walking.  The defendant prescribed him Percocet for use over the weekend and scheduled a follow-up appointment for the following week.  At

_____

[5] As "health care providers," both are required to comply with the terms of G. L. c. 112, § 5, which addresses medical licensure and the investigation and reporting of licensed physicians for wrongdoing.  This issue is further discussed infra.

that appointment, on June 2, the plaintiff reported that his back pain persisted, and that the Percocet was helping to alleviate that pain. As a result, he continued taking Percocet under the supervision of the defendant.

On July 1, 2014, the plaintiff and his wife suffered carbon monoxide poisoning when the plaintiff left his car running in his home garage for several hours. They were discovered, unresponsive, by their son but recovered after being treated by emergency medical personnel and transported to Massachusetts General Hospital. The defendant learned of the incident after reading about it in a newspaper and contacted the plaintiff on July 3 to ask if he had attempted suicide. The plaintiff stated that he had not, claiming that he had been in a hurry to get inside the house due to his severe back pain and that, in his haste, he had accidentally left the car running.

On July 16, 2014, the plaintiff attended a follow-up appointment with the defendant. The two discussed the plaintiff's back pain and his carbon monoxide poisoning. The plaintiff also informed the defendant that he planned to open his own medical practice on August 4. During their discussion, the defendant told the plaintiff that he appeared less focused than usual and that the defendant was concerned about the plaintiff's ability to function at the highest levels. The defendant further advised the plaintiff that he should not

perform surgery while on his then-current prescription regimen. Although the plaintiff did not acknowledge the defendant's concern about his level of focus during the appointment, the plaintiff agreed that he would not perform surgery while using opioids.

A few days later, on July 20, the defendant sent an e-mail message to the plaintiff reiterating the defendant's concern about the plaintiff's use of narcotics and plan to begin treating patients while continuing to take Percocet and other prescription medication. The defendant also informed the plaintiff that the defendant would be mandated to report the plaintiff to the Board of Registration in Medicine (board) if the defendant felt that the plaintiff was practicing while impaired and advised him that he should stop patient contact. The plaintiff responded, inter alia, that he had seen patients in the past without issue while prescribed Percocet, and that he did not take Percocet before performing surgery while under the care of his previous doctors.

Separately, the defendant spoke with the risk management department at his place of work about his legal obligation to report the plaintiff to the board in the event that the defendant suspected the plaintiff was treating patients while impaired. Thereafter, the defendant contacted PHS and spoke with Dr. Steven Adelman, a PHS physician, about his concerns

regarding the plaintiff.  Dr. Adelman agreed to see the plaintiff for an evaluation regarding his use of opioids.

Later the same day, the defendant called the plaintiff to inform him about the defendant's contact with PHS and his conversation with Dr. Adelman.  The plaintiff was surprised and continued to disagree with the defendant's assessment that he was unfit to treat patients while on his current course of medication.  Nevertheless, he agreed to meet with Dr. Adelman, and the defendant did not report him to the board at that time.

After meeting with the plaintiff, Dr. Adelman recommended that the plaintiff voluntarily stop treating patients and enter inpatient treatment for opioid addiction.  Dr. Adelman informed the plaintiff that if he did not agree to go into treatment, Dr. Adelman would inform the defendant, who would then call the board.  Although the plaintiff was reluctant to do so, he complied.  He attended inpatient treatment at the Caron Comprehensive Addiction Treatment Center in Pennsylvania (Caron) for six days, from August 3 to August 8, 2014.  On his discharge, Caron recommended that the plaintiff not practice medicine prior to obtaining further treatment and that he discontinue the use of certain narcotics.[6]  Furthermore, PHS recommended that the plaintiff attend additional treatment at

---

[6] The plaintiff was advised to discontinue all opioids, acetaminophen, and triptans.

Shands Vista Hospital in Florida, which he did from September through November 2014.  The plaintiff returned to practicing medicine in early 2015, subject to certain conditions imposed by PHS.

The plaintiff filed the underlying complaint in June 2017, alleging negligence, interference with advantageous business relations, violation of the Massachusetts Civil Rights Act, and invasion of privacy.  The defendant filed a motion to dismiss the latter three counts pursuant to the anti-SLAPP statute, G. L. c. 231, § 59H, on December 1, 2017.  A Superior Court judge allowed that motion on March 30, 2018.  The defendant subsequently moved for summary judgment on the remaining count of negligence, and the judge allowed that motion on July 29, 2021.  The plaintiff timely appealed.

Discussion.  1.  Anti-SLAPP.  The plaintiff argues that the judge erred in concluding that the defendant's activities were protected as petitioning activity under G. L. c. 231, § 59H.  He asserts that the defendant's communication with PHS was insufficiently connected to speech targeting the government as to be protected under the anti-SLAPP statute.  He further argues that, without a pending governmental proceeding pertaining to him, the defendant's speech could not have constituted protected petitioning activity.  We disagree.

General Laws c. 231, § 59H, protects defendants against litigation intended to chill the legitimate exercise of their right to petition the government.  See Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161 (1998) (Duracraft).  "Under G. L. c. 231, § 59H, a party may file a special motion to dismiss if the civil claims . . . against it are based solely on its exercise of the constitutional right to petition" (quotation and citation omitted).  Nyberg v. Wheltle, 101 Mass. App. Ct. 639, 645 (2022).  The Duracraft framework is used to evaluate the motion, see Nyberg, supra, and requires that "[a]t the first stage, a special movant must demonstrate that the nonmoving party's claims are solely based on its own petitioning activities."  Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 159 (2017) (Blanchard I).  See Duracraft, supra at 167-168.  "At the second stage, if the special movant meets [the first stage] burden, the burden will shift . . . to the nonmoving party."  Blanchard I, supra.  From there, the nonmoving party may prevail by (1) "demonstrating that the special movant's petition activities upon which the challenged claim is based lack a reasonable basis in fact or law . . . and that the petitioning activities at issue caused it injury," or (2) "by demonstrating . . . that each challenged claim does not give

rise to a 'SLAPP' suit."[7] Id. at 159-160. The second stage of the Duracraft framework is not at issue here because the plaintiff on appeal challenges only the judge's determination regarding the first stage.

Here, the defendant's communication with PHS qualifies as protected petitioning activity under G. L. c. 231, § 59H. See North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 862 (2009) ("Statements made outside any formal governmental proceedings have often been considered petitioning activity"). General Laws c. 112, § 5F, requires peer reporting to the board in situations where there is a reasonable basis to believe that a physician is in violation of the statute or regulations of the board, except where prohibited by law. See G. L. c. 112, § 5F ("Any health care provider . . . shall report to the board any person who there is reasonable basis to believe is in violation of . . . any of the regulations of the board, except as otherwise prohibited by law"). See also 243 Code Mass. Regs. § 2.14(4)(a) (2012) ("A doctor of medicine . . .

---

[7] Parties can show that a claim does not give rise to a SLAPP suit by "establish[ing], such that the motion judge may conclude with fair assurance, that its primary motivating goal in bringing its claim, viewed in its entirety, was 'not to interfere with and burden defendants' . . . petition rights, but to seek damages for the personal harm to [it] from [the] defendants' alleged . . . [legally transgressive] acts.'" Blanchard I, 477 Mass. at 160, quoting Sandholm v. Kuecker, 2012 IL 111443, ¶ 57.

must report to the [b]oard when he or she has a reasonable basis to believe that a physician may have violated . . . any regulation of the [b]oard").[8]  As licensed physicians, both the plaintiff and defendant were subject to this requirement.  See G. L. c. 112, § 5F.  An exception exists where, inter alia, a physician impaired by drugs or alcohol is in compliance with a treatment program.  See 243 Code Mass. Regs. § 2.07(23) (2012).  PHS is a nonprofit corporation founded by the Massachusetts Medical Society to address issues of physician health and is recognized by the board as a drug and alcohol treatment program under 243 Code Mass. Regs. § 2.07(23).  The defendant informed PHS of his concerns regarding the plaintiff with the implicit understanding that the communication to PHS would, by law, reach the board if the plaintiff did not comply with the treatment plan created by PHS.  See G. L. c. 112, § 5F.  Therefore, although the defendant did not petition a governmental agency directly, he did so indirectly, albeit conditionally, via his communication with PHS.  In these circumstances, such an indirect communication is shielded by G. L. c. 231, § 59H.  See Blanchard I, 477 Mass. at 149, quoting North Am. Expositions Co. Ltd. Partnership, supra ("To fall under the 'in connection with' definition of petitioning under the anti-SLAPP statute, a

---

[8] We cite throughout to the version of the regulations in effect at the time of the underlying events in this case.

communication must be 'made to influence, inform, or at the very least, reach governmental bodies -- either directly or indirectly'"). The judge did not err in allowing the special motion to dismiss.

2. Negligence. The plaintiff argues that summary judgment should not have been entered on his negligence claim because (1) the defendant was not entitled to a conditional privilege under G. L. c. 112, § 5G (a), for reports made to PHS, and (2) disputed issues of material fact exist with respect to the breach of the standard of care and causation. In response the defendant asserts, broadly, that the motion judge was correct in allowing the motion for summary judgment and dismissing the claim because the immunity provision of G. L. c. 112, § 5G (a), applies. We agree with the defendant and conclude that he is immune from claims arising from his communication with PHS under G. L. c. 112, § 5G (a).

As the Supreme Judicial Court stated in Drakopoulos v. U.S. Bank Nat'l Ass'n, 465 Mass. 775, 777-778 (2013),

> "In considering a motion for summary judgment, we review the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. Because our review is de novo, we accord no deference to the decision of the motion judge. The defendants, as the moving parties, have the burden of establishing that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts

establishing the existence of a material fact in order to defeat the motion."  (Quotations and citations omitted.)

We turn first to the question of the defendant's asserted immunity under G. L. c. 112, § 5G (a), which provides in part that

> "[n]o person or health care provider who communicates with a peer review committee, administrative subcommittee, ethics committee or other similar committee of a health care provider, [or] professional society of health care providers . . . shall be liable in any cause of action arising out of the providing . . . of such communication provided that such person or health care provider acts in good faith and with a reasonable belief that such communication was warranted in connection with or in furtherance of the functions of such committee."

"In interpreting similar qualified immunities and privileges, Massachusetts decisions are uniform in holding that, once immunity has been invoked, the burden of overcoming the immunity rests exclusively with the plaintiff."  Maxwell v. AIG Dom. Claims, Inc., 460 Mass. 91, 104 (2011).

Here, we conclude that the defendant was entitled to qualified immunity under G. L. c. 112, § 5G (a), with respect to any claim arising from his communication with PHS.[9]  As a nonprofit corporation founded by the Massachusetts Medical Society to address issues of physician health, including the

---

[9] We note that G. L. c. 112, § 5G (b), creates immunity for any person making a report to the board, which was the alternative proposed by the defendant had the plaintiff not accepted treatment under the terms set by PHS.

treatment of addiction, PHS is a peer review committee within the meaning of G. L. c. 112, § 5G (a). See G. L. c. 111, § 1 (defining medical peer review committee). It follows, therefore, that the defendant's communication to PHS regarding his concern about the plaintiff is protected unless the plaintiff can show either that the defendant failed to act in good faith or that he had no reasonable belief that the communication furthered the purpose of PHS.[10] See G. L. c. 112, § 5G (a). We examine each in turn.

First, the plaintiff argues that he raised a triable issue concerning the defendant's good faith based on the affidavit the plaintiff submitted in connection with his opposition to the motion for summary judgment. Specifically, he asserts that the defendant falsified the medical record concerning the plaintiff's July 16, 2014 appointment in order to suggest that the plaintiff's abuse of prescription narcotics had been discussed during that appointment when, in fact, no such discussion had occurred. The plaintiff posits that the defendant falsified the record in order to avoid any potential

_____

[10] The Supreme Judicial Court has defined good faith in other contexts as "an honest belief, the absence of malice, or the absence of a design to defraud or to seek an unconscionable advantage over another." Carey v. New England Organ Bank, 446 Mass. 270, 282 (2006). See Pardo v. General Hosp. Corp., 446 Mass. 1, 11-12 & nn.23 & 24 (2006).

liability for his own prescribing practices.[11]  However, the plaintiff's affirmative assertion in his affidavit that no discussion regarding his impairment occurred conflicted with his prior deposition testimony, in which he stated that he could not recall how many times he discussed the issue of impairment with the defendant and that he was unsure whether the conversation occurred at all.  The plaintiff could not create a dispute of fact by contradicting his own previous sworn testimony.  See Phinney v. Morgan, 39 Mass. App. Ct. 202, 207 (1995) ("The plaintiff['s] affidavit[] . . . cannot be used to contradict previous statements made by the plaintiff[] under oath in order to create a material issue of fact to defeat summary judgment").  See also O'Brien v. Analog Devices, Inc., 34 Mass. Appt Ct. 905, 906 (1993) ("a party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition").

Next, the plaintiff has failed to identify a genuine factual dispute that the defendant's communication with PHS was

---

[11] The plaintiff also argues that the development of the defendant's concern following an incident interpretable as a possible suicide attempt is "[c]ircumstantially . . . probative of a design to protect" the defendant against liability. However, assuming without deciding that liability exists, the plaintiff has not identified any way in which feigned concern would mitigate such liability.  The plaintiff's proposed inference is therefore unreasonable.  See Drakopoulos, 465 Mass. at 777.

not warranted in connection with or furtherance of a function of PHS. The undisputed record shows that PHS is a service intended to, inter alia, aid doctors struggling with substance use disorder. The record is replete with evidence of the plaintiff's history of opioid dependence at a time when he intended to start a new medical practice that would include surgery. The plaintiff's reliance on opioids was so serious that it had led the plaintiff to leave his car running inside his garage, resulting in carbon monoxide poisoning of him and his wife. Furthermore, the defendant had observed the plaintiff's demeanor and apparent confusion during the July 16 appointment. On the summary judgment record, the plaintiff has raised no triable issue of fact concerning whether the defendant lacked a reasonable basis to believe that the plaintiff was dependent on drugs such that a report would be required. See 243 Code Mass. Regs. § 2.07(23). The plaintiff persists in his assertion that his affidavit opposing summary judgment was sufficient to create a dispute as to the defendant's genuine purpose in referring the plaintiff to PHS. As discussed supra, the motion judge did not err in declining to consider the affidavit to the extent that it contradicted the plaintiff's earlier sworn deposition testimony. See Phinney, 39 Mass. App. Ct. at 207.

Absent the contradictions in the plaintiff's affidavit, the remaining evidence supports the conclusion that the defendant's decision to refer the plaintiff was reasonable within the meaning of the immunity provision of G. L. c. 112, § 5G (a). See Knight v. Board of Registration in Med., 487 Mass. 1019, 1023 (2021) (suspension of medical license upheld where, inter alia, physician practiced medicine while impaired).

Our conclusion that the defendant is immune from liability under G. L. c. 112, § 5G (a), extends to all theories of liability on which the plaintiff's negligence claim is based, including that the defendant committed a breach of the standard of care by referring the plaintiff to PHS instead of personally continuing to treat his use of painkillers.

3. Fees. The defendant requests that we award attorney's fees for defending this appeal related to the special motion to dismiss. General Laws c. 231, § 59H, provides for the mandatory award of attorney's fees, and that provision "would ring hollow if it did not necessarily include a fee for the appeal." McLarnon v. Jokisch, 431 Mass. 343, 350 (2000), quoting Yorke Mgt. v. Castro, 406 Mass. 17, 19 (1989). Accordingly, the defendant may seek reasonable appellate attorney's fees and costs for defending counts II through IV in accordance with the procedure set forth in Fabre v. Walton, 441 Mass. 9, 10-11 (2004). See Demoulas Super Mkts., Inc. v. Ryan, 70 Mass. App.

Ct. 259, 268-269 (2007).  The defendant "may file [his] application for fees and costs, with any appropriate supporting materials, with the clerk of the [Appeals Court] within fourteen days of the date of the rescript."  Fabre, supra at 11.  The plaintiff may respond to the petition within fourteen days of said filing.

Judgment affirmed.